Candice Ann McPHERREN, Appellant,

v.

C. Michael McPHERREN, Appellee.

No. 08–97–00048–CV.

Court of Appeals of Texas,
El Paso.

April 9, 1998.

Rehearing Overruled May 20, 1998.

Tom McCall, David B. McCall, McCall & Ritchie, LLP, Diane W. Sanders, Austin, for Appellant.

David W. Lindemood, Brockett & Lindemood, Midland, for Appellee.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

Candice Ann McPherren appeals from a judgment of the district court denying her motion for enforcement or clarification of a decree of divorce or, in the alternative, post-judgment partition. We affirm.

## FACTUAL SUMMARY

For ease of reference, we will address the parties' according to their prior marital sta-

tus as Husband and Wife. During the marriage, Husband was employed by Enron Corporation. Although the record does not detail the date on which he began his employment or the duration thereof, it is undisputed that the employment relationship was severed in 1989. On October 23, 1992, the Court entered a final decree of divorce which incorporated the parties' property settlement agreement.

## THE DECREE AND QDRO

At the outset, we note that pursuant to a "Mother Hubbard" clause, Husband was awarded all retirement benefits in three Enron plans except the amounts specifically awarded to Wife:

> Any and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reason of [Husband]'s past, present or future earnings, except that amount specifically awarded to [Wife] herein in the Enron Corp. Savings Plan, Enron Corp. Retirement Plan and Enron Corp. Employee Stock Ownership Plan.

The Qualified Domestic Relations Order (QDRO) contained in the decree also specified the existence of three retirement plans:

> 5.04 Participant has accrued benefits or has had contributions made to his account under the following tax qualified pension plans (collectively referred to herein as the 'Pension Plans'):
>
> > Enron Corp. Savings Plan, a defined contribution pension plan;
> >
> > Enron Corp. Retirement Plan, a defined benefit pension plan;
> >
> > Enron Corp. Employee Stock Ownership Plan ('ESOP'), a leveraged defined contribution pension plan.

According to Mary Hollis, the Enron benefits representative, there were no other plans in existence at the time of the divorce.

The ESOP plan was divided into two sub-accounts, which are described in the decree:

5.05 Assignment Covering Defined Contribution Plans.

C. The total interest of Participant in the Enron Corp. Employee Stock Ownership Plan ('ESOP') is the total sum of all contributions, together with all interest and earnings thereon, which have been allocated and are credited to the ESOP account of Participant as of September 30, 1992, ('ESOP Interest'). Of such ESOP Interest, the portion thereof credited to the ESOP Savings Account of the Participant is referred to as the 'ESOP Savings Account Interest', and the portion thereof credited to the ESOP Retirement Account of the Participant is referred to as the 'ESOP Retirement Account Interest'.

Wife was awarded 50 percent of the Savings Plan and 50 percent of the ESOP subaccount known as the ESOP Savings Account Interest. The distribution of these benefits is not in issue.[1]

The parties' interest in the Retirement Plan is described as:

5.06. Assignment Covering Defined Benefit Plan.

A. The total interest of Participant in the Enron Corp. Retirement Plan ('Retirement Plan') is the amount of the monthly life only benefit accrued on behalf of Participant under the Retirement Plan as of September 30, 1992, subject to reduction by the ESOP Offset provisions thereof ('Retirement Plan Interest'). The estimated monthly life only Retirement Plan accrued benefit of Participant under the Retirement Plan prior to 1987 is Three Hundred Thirty-Nine and 76/100 Dollars ($339.76), which is not subject to reduction by the ESOP Offset provisions. The estimated monthly life only Retirement Plan accrued benefit of Participant under the Retirement Plan after 1986 is Three Hundred Ten and 84/100 Dollars ($310.84), which is subject to reduction by the ESOP Offset provisions.

Since a portion of the interest granted to Alternate Payee in Participant's Retirement Plan Interest is subject to reduction by the ESOP Offset, Alternate Payee has also received grant of a contingent interest in Participant's ESOP Retirement Account.

B. Of Participant's Retirement Plan Interest, Alternate Payee is awarded and granted a monthly amount of Three Hundred Twenty–Five and 30/100 Dollars ($325.30) or fifty percent (50%) of Participant's Retirement Plan Interest, whichever is greater, becoming due and payable to the Alternate Payee upon payment of benefits under the Retirement Plan to Participant.

Thus, Wife received one-half of the Retirement Plan, i.e. the defined benefit plan. The contingent interest in the ESOP retirement subaccount awarded to Wife specified:

5.05 Assignment Covering Defined Contribution Plans.

E. Alternate Payee is awarded and granted a contingent interest in Participant's ESOP Retirement Account interest until such time as the amount of the total ESOP Offset provided for in the Retirement Plan is determinable (the 'Offset Determination Date'). No distribution, withdrawal or loan of the assets of Participant's ESOP Retirement Account Interest shall be made to Participant until the Offset Determination Date. The value of such interest granted to Alternate Payee shall be all or a portion of the ESOP Retirement Account (as determined by the plan administrator of the retirement Plan using actuarial factors provided for administration of the ESOP Offset in the Retirement Plan) which as of the Offset Determination Date would provide Alternate Payee an amount of monthly income for life equal to 'A' minus 'B' (A—B), where 'A' is the total interest granted to Alternate Payee in the Participant's Retirement Plan Interest not reduced by the ESOP Offset, and 'B' is that portion of 'A:

---

**1.** Wife withdrew $18,055.21 from the ESOP savings subaccount on April 15, 1994 and another $10,801.90 on June 17, 1994.

[sic] which is reduced by the ESOP Offset.

Wife was not awarded one-half of this subaccount or any other award save for the contingent interest which secured her annuity under the Retirement Plan.

## TRIAL TESTIMONY

### Plan Funding Amendment

The testimony at trial revealed that the ESOP plan came into existence on January 1, 1987. The shares of stock held in the ESOP retirement subaccount were to be used to buy an annuity that would provide the monthly benefit that accrued after January 1, 1987. Benefits accrued prior to that date were funded by the retirement plan trust. Upon retirement, the participant could choose to purchase an annuity, to take a lump sum cash award, or to take the shares of stock. At the time of divorce, the plans prohibited access to the stock until the participant retired. On January 1, 1996, Enron amended its plan to allow distributions from the ESOP retirement subaccount in 20 percent increments per year over a five year period. When Wife attempted to gain distribution of shares from the retirement subaccount, she learned that Enron interpreted the QDRO as not awarding her an interest in the retirement subaccount. On January 29, 1996, she filed her motion seeking clarification and enforcement of the final decree and, alternatively, a division of assets she asserted were not divided. At the time of trial, Husband had elected to receive an initial distribution of 20 percent which netted him approximately $18,000. The parties both testified that the stock remaining in the ESOP retirement subaccount had a value of approximately $100,000.

### Enron's Position

Mary Hollis, an Enron benefits representative, testified that Husband's precise monthly annuity under the retirement plan could not be calculated at the time of divorce because of the variables required under the plan formula. For example, the annuity would depend on Husband's age at the time of retirement. Were Husband to retire at 55 rather than at 65, the monthly annuity would be lower. Because the amount of the annuity could not be computed, the amount of shares necessary to fund the annuity could likewise not be calculated. This factor was predicated not only on the value of the annuity based on retirement age, but the value of the stock in the ESOP plan at the time of retirement.

While the QDRO identified the percentage of the monthly annuity awarded to Wife, i.e. her share of the retirement plan, it did not address the mechanics of funding her annuity. As a result, Enron's plan design dictated the funding of the annuity. The plan design specified that annuity benefits would be paid first from the pre-1987 benefits, those funded by the retirement plan trust, and any remainder due would be paid from the post-1987 benefits, those funded by the ESOP retirement subaccount. Because Wife was awarded a benefit of $325.30 and because Husband's pre-1987 monthly benefit was $339.76, there was no remainder due. Thus, according to Hollis, the contingent interest in the ESOP retirement subaccount was moot. This was evident at the time of the divorce in 1992; in fact, the sample QDRO forms and information which Enron supplied to the parties and their attorneys reflected this information. There were sufficient funds from the retirement plan trust to fund Wife's annuity without regard to the ESOP retirement subaccount. Since her annuity was fully funded from the retirement plan trust, if the value of Enron stock plummets to zero, her annuity was fully protected. On the other hand, Husband's annuity was at least partially funded by the Enron stock held in the retirement subaccount. Wife was not awarded a specific interest in the retirement subaccount, other than the contingent interest which ultimately proved unnecessary to protect her benefits. And while at the time of divorce, Husband could not access the stock in the retirement subaccount, and could not thereafter until Wife's contingent interest lapsed, the 1996 amendment to the ESOP plan allowed him access to the stock in lieu of his pension annuity.

### Wife's Theories of Recovery

Wife nevertheless contended that she was awarded an interest of $325.30 or one-half of

the retirement benefits, whichever was greater. However, Hollis testified that the retirement plan itself was not amended. Only the funding source for the retirement plan annuity was changed. Because the funding change was not necessary to fund Wife's annuity as calculated in the decree, her contingent interest in the subaccount was unnecessary. This argument, said Wife, gives no meaning to the language in Paragraph 5.06B of the decree that she was awarded $325.30 or one-half of the Retirement Plan Interest, whichever is greater. She assumes that $325.30 was the floor. Indeed, a clear reading of the QDRO reveals that it operated not as a floor but as a ceiling. Hollis testified that the estimated annuity benefits contained within the QDRO reflected retirement at age 65. Had Husband retired earlier than age 65, the benefits would have been less. Hollis testified that Wife's annuity was calculated by adding the pre–1987 benefit ($339.76) and the post–1987 benefit ($310.84) and dividing the total ($650.60) by two to reach $325.30. Hollis revealed that Wife's annuity could never have been more than that. Thus, it was conceivable that Wife's benefit would be less than the $325.30 that was contemplated. In that instance, Wife was protected by the language of the QDRO, guaranteeing her an annuity of $325.30, even if one-half of the actual annuity were less.

Wife next contended that the QDRO awarded her one-half of the ESOP retirement subaccount, or if it did not, she alternatively requested that the decree be clarified, as it was the intention of the parties that all of the retirement benefits be divided equally between the parties. Still further, she argued that if she were not entitled to enforcement or clarification as a result of the 1996 plan funding amendment, the stock in the ESOP retirement subaccount constituted an undivided asset for which she sought partition.

Following a bench trial, the court denied all relief and awarded trial and appellate attorney's fees in favor of Husband and against Wife. Wife brings this appeal.

## ENFORCEMENT

Wife's first six points of error broadly challenge the trial court's findings that she was not awarded an undivided one-half interest in the retirement subaccount, but was instead awarded only a monthly life annuity from the Retirement Plan. She complains specifically that the findings are against the great weight and preponderance of the evidence and that they impermissibly modify and contravene the express terms of the division of property.

### *Standard of Review*

Findings of fact are accorded the same force and dignity as a jury verdict on special issues. When they are supported by competent evidence, they are generally binding on the appellate court. Where a statement of facts is available, challenged findings are not binding and conclusive if manifestly wrong. The same is true of patently erroneous conclusions of law. *Reddell v. Jasper Federal Savings & Loan Association*, 722 S.W.2d 551 (Tex.App.—Beaumont 1987), *rev'd on other grounds*, 730 S.W.2d 672 (Tex. 1987); *de la Fuente v. Home Savings Association*, 669 S.W.2d 137 (Tex.App.—Corpus Christi 1984, no writ). We thus apply the traditional sufficiency of the evidence review to establish the propriety of the findings of fact.

"Insufficient evidence" or factual insufficiency involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. The test for factual insufficiency points is set forth in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). In reviewing a point of error asserting that a finding is against the great weight and preponderance of the evidence, the appellate court must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. If the finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained.

### Consent Decrees

 A division of the community estate may be effectuated by court order following a contested evidentiary hearing or by an agreement of the parties. *Soto v. Soto,* 936 S.W.2d 338, 340 (Tex.App.—El Paso 1996, no writ). Where the divorce decree is a consent or agreed judgment, it is controlled by the rules relating to the construction of contracts. *Id.* When construing an agreement incident to divorce, a court must look to the intentions of the parties as they are manifested in the written agreement. *Id.* at 341; *see also Thompson v. Thompson,* 500 S.W.2d 203, 207 (Tex.Civ.App.—Dallas 1973, no writ)(stating that the court was "bound by the express stated intent of the parties as manifested within the four corners of the instrument itself"). If a written agreement is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous. *Soto,* 936 S.W.2d at 341. The final decree of divorce between the McPherrens contained a property settlement agreement such that it constitutes a consent judgment. Significantly, Wife at no time pleaded ambiguity or mutual mistake.

### Findings of the Court

In the findings of fact and conclusions of law, the trial court quoted directly from the final decree of divorce and found that Wife was not entitled to 50 percent of Husband's ESOP retirement subaccount, but only to the monthly life-only benefit of $325.30, or 50 percent of the Retirement Plan Interest, whichever was greater.[2] Wife herself testified that there was no language in the decree that awarded her a 50 percent interest in the retirement subaccount.

Wife essentially requested that the trial court modify the division of property contained in the decree to award her one-half of the retirement subaccount. Enforcement of

the division of property awarded by a divorce decree is governed by TEX.FAM.CODE ANN. § 3.71 (Vernon 1993)[3] which provides in relevant part as follows:

(a) [A] court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. Further orders may be entered to enforce the division, but these orders shall be limited to orders in aid of or in clarification of the prior order. The court may specify more precisely the manner of effecting the property division previously made if the substantive division of property is not altered or changed.

(b) An order under this section that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court to enter and is unenforceable.

 Orders for enforcement are limited to orders in aid or clarification of the prior order. *Dechon v. Dechon,* 909 S.W.2d 950, 956 (Tex.App.—El Paso 1995, no writ), citing *Pierce v. Pierce,* 850 S.W.2d 675, 679 (Tex. App.—El Paso 1993, writ denied); TEX.FAM. CODE ANN. § 3.71(a). Such orders may more precisely specify the manner of carrying out the property division previously ordered so long as the substantive division of the property is not altered. *Dechon,* 909 S.W.2d at 956; *Pierce,* 850 S.W.2d at 679. Section 3.72(b) provides that a clarification order may only be made upon a finding, express or implied, that the original form of the division of property lacks sufficient specificity to be enforced by contempt. *Id.* Here, the trial court specifically found that the decree was "specific enough to be enforceable by contempt." There was no finding of ambiguity, either express or implied.

2. "Retirement Plan Interest" is a defined term contained within the QDRO. Paragraph 5.06 deals specifically with the defined benefit plan, of which there was only one—the Enron Corp. Retirement Plan. Subparagraph A defines "Retirement Plan Interest" as "the amount of the *monthly life only benefit accrued* on behalf of Participant under the retirement Plan as of September 30, 1992 [the date of divorce], subject to

reduction by the ESOP Offset provisions thereof."

3. Title 1 of the Texas Family Code was recodified by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997. Specifically former § 3.71 has been recodified as § 9.001 *et.seq.* Because this proceeding was commenced prior to the recodification, we refer to the former statutory provisions.

■ Given that the decree did not award Wife an interest in the retirement subaccount other than a contingent interest to secure her monthly annuity, and given that her annuity was funded by the retirement plan trust such that the contingent interest had lapsed, enforcement was not an appropriate remedy. We conclude that sufficient evidence supports the findings of fact and that the trial court's construction of the decree did not constitute an impermissible modification of the division of property. Points of Error Nos. One through Six are overruled.

## CLARIFICATION

As a prerequisite to clarification, a trial court must find that the original form of the division of property lacks sufficient specificity to be enforced by contempt. TEX.FAM. CODE ANN. § 3.72(b)[4]; *Dechon*, 909 S.W.2d at 956. In Points of Error Nos. Seven and Eight, Wife asserts that the trial court erred in finding that the decree was specific enough to be enforceable by contempt. In Points of Error Nos. Nine and Ten, she argues that the trial court failed to give effect to the substantive changes made by Enron Corp. to its retirement plans on January 1, 1996.

■ The provision in the decree which delineates the payment of benefits relates only to the Retirement Plan and not to the retirement subaccount.

> Of Participant's Retirement Plan Interest, [Wife] is awarded and granted a monthly amount of Three Hundred Twenty–Five and 30/100 Dollars ($325.30) or fifty percent (50%) of Participant's Retirement Plan Interest, whichever is greater, becoming due and payable to the Alternate Payee upon payment of benefits under the Retirement Plan to [Husband].

The QDRO also provides that:

> This qualified domestic relations order shall not (i) require any of the Pension Plans to provide a type or form of benefit, or any option, not otherwise provided for according to provisions of the Pension Plans....

As we have already noted, the Retirement Plan Interest is a defined term referencing the monthly annuity under the defined benefit plan. That there was no provision for the possibility of a lump sum payment to Wife from the retirement subaccount, a defined contribution ESOP plan, does not render the decree ambiguous.

Originally, Wife sued both Husband and Enron and sought an order that they "deliver to [Wife] and allow her participation in the retirement plan in the same manner as [Husband]." Enron was ultimately dismissed as a party to the lawsuit. Wife then sought an order permitting Wife to receive immediate payment on her monthly annuity, citing *Echols v. Echols*, 900 S.W.2d 160 (Tex.App.— Beaumont 1995, writ denied). We find *Echols* inapplicable. Although the monthly retirement benefits contemplated by the agreed decree were converted post-divorce to lump sum payment upon Mr. Echols' early retirement, Mr. Echols had been awarded all of the benefits subject to his appointment as a constructive trustee of Mrs. Echols interest. The decree required that when he received any benefits, he would pay to his former wife her proportionate interest as specified in the decree. Here, Husband was not ordered or otherwise directed to pay any sums to Wife nor was he designated as a constructive trustee for her benefit. There is no basis upon which the court could order Husband to require Enron to make a lump sum option available to Wife. Further, because Enron was no longer a party to the litigation, the court had no ability to order Enron to make Wife's monthly annuity immediately accessible or to withhold from Husband the shares of stock contained in the ESOP retirement subaccount.

■ The only remaining vehicle which Wife urged below was a requirement that Husband be prohibited from withdrawing the shares of stock from the retirement subaccount until Wife's annuity was in pay status. She based this argument on the premise that the intent of the parties was to divide all of the benefits equally and to permit her to receive payment of benefits at the time bene-

---

4. Former § 3.72(b) is now recodified at TEX.FAM. CODE ANN. § 9.008(b)(Vernon 1997).

fits were paid or payable to Husband. In short, she suggests that "the trial court should have ... issued an order prohibiting [Husband] from withdrawing retirement benefits prior to the payment of such benefits to [Wife], even if [Wife] owned no interest in [Husband's] benefits." The plain language of the decree of divorce prevents this conclusion.

5.07. Regarding the Pension Plans.

B. Notwithstanding any other provision of this qualified domestic relations order, by written notification to the administrator of any of the Pension Plans, *Alternate Payee may elect to receive payment of benefits granted in this domestic relations order to Alternate Payee* under any of the Pension Plans:

. . .

(iii) *in any form in which such benefits may be paid* under the Pension Plans *to the Participant* (other than in the form of a joint and survivor annuity with respect to the alternate payee and his or her subsequent spouse.) [Emphasis added].

Wife could therefore require payment to her in the same manner or fashion as payments to Husband only with regard to benefits awarded to her. Because Wife was not awarded any interest in the ESOP retirement subaccount, she cannot now demand payment of her annuity benefits.

We conclude the trial court did not err in finding that the decree was specific enough to be enforceable by contempt or in declining to prohibit the distribution of the stock in the retirement subaccount to Husband. Accordingly, Points of Error Nos. Seven through Ten are overruled.

### PARTITION

In Points of Error Nos. Eleven and Twelve, Wife asserts that the trial court erred in failing to partition the post-divorce increase in the value of the Retirement Plan because the increase was not attributable to Husband's labor and efforts at Enron Corp., and because Wife was entitled to 50 percent of these increases under the final decree of divorce.

The post-divorce increase in value was not, as Wife asserts, to the Retirement Plan. The post-divorce increase in value was to the Enron stock held in the ESOP retirement subaccount. As set forth above, Wife was not awarded a 50 percent interest in the retirement subaccount and she is not entitled to any increases in the value of the stock. We cannot modify or alter the division of property made or approved in the decree of divorce. TEX.FAM.CODE ANN. § 3.71. The asset was awarded in its entirety to Husband, subject only to a contingent interest in Wife's favor which has since lapsed. Points of Error Nos. Eleven and Twelve are overruled.

### ATTORNEY'S FEES

Wife's final two points of error contend that the trial court erred in awarding attorney's fees against her and in favor of Husband in that there was no statutory basis for the award. We disagree. Pursuant to TEX.FAM.CODE ANN. § 3.77, in a proceeding to enforce a property division, the court may award costs as in other civil cases. Attorney's fees are recoverable in an action to clarify and enforce. *McEntire v. McEntire*, 706 S.W.2d 347 (Tex.App.—San Antonio 1986, writ dism'd). A court may, in its discretion, award attorney's fees in a proceeding to enforce a divorce decree. *Cook v. Cameron*, 733 S.W.2d 137, 141 (Tex.1987). Wife has made no showing, however, that the court abused its discretion in awarding attorney's fees, nor does she challenge the specific sum awarded. Accordingly, Points of Error Nos. Thirteen and Fourteen are overruled.

### CONCLUSION

The notice Husband received from Enron concerning the amendment specified that the value of the retirement subaccount was intended to provide for future retirement needs via the annuity. The notice warned that the average American spends eighteen years in retirement. "If you elect to 'spend' the funds in your Retirement Subaccount, you will have essentially spent your Enron Corp. Retirement Plan Benefit earned from any applicable years during 1987 through 1994 plus any surplus attributable to the performance of Enron common stock." This

is not a situation in which Husband received his portion of the retirement annuity *plus* the shares of stock in the retirement subaccount. He opted to liquidate the stock which was to fund his annuity. In short, he has elected to receive his annuity at a rate of 20 percent over five years. Under both the QDRO and the retirement plans, that was his option. He has not acted to defeat or reduce any award to Wife. Had Wife received a specific percentage interest in the retirement subaccount, or had the QDRO specified that her benefits would be funded from the subaccount, Enron would have been required to offer Wife the same option. There is no such requirement. However, under the plan and under the QDRO, Wife can elect a cash lump sum award in lieu of the annuity when she is eligible to receive the benefits. Accordingly, the judgment is affirmed.