TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00246-CV






Gene Milligan, Appellant



v.



Marilisa Niebuhr, Appellee






FROM THE DISTRICT COURT OF CALDWELL COUNTY, 207TH JUDICIAL DISTRICT


NO. 97-0-170, HONORABLE JACK ROBISON, JUDGE PRESIDING (1)







 Appellant Gene Milligan sought injunctive and declaratory relief concerning his
rights pursuant to an easement burdening land owned by his former spouse, appellee Marilisa
Niebuhr. The trial court ruled that the easement was terminated by a final decree of divorce that
awarded the burdened property to Ms. Niebuhr. Milligan brings this appeal, complaining that the
trial court erred in finding that the agreed decree terminated his easement. We will affirm the trial
court's judgment.


BACKGROUND


 In July 1983, Dr. Gene Milligan purchased an 8.98 acre tract, known as the "Peach
Orchard," in the Bella Vista subdivision of Caldwell County near the San Marcos River. His
purchase included an easement across an adjoining strip of land, known as Lot 13, "for access to
the river and recreational purposes." In addition to the Peach Orchard, Dr. Milligan also owned Lot
14, a riverfront tract adjoining Lot 13 and of similar size and shape. (2) In November 1991, Marilisa
Niebuhr purchased Lot 13, subject to the easement pertaining to the Peach Orchard. The two
neighbors married in May 1992 and divorced in October 1995. The parties each signed an agreed
decree of divorce, "approved and consented to as to both form and substance." This agreed
decree awarded Lot 13 to Ms. Niehbuhr and the Peach Orchard, as well as Lot 14, to Dr.
Milligan. Neither party appealed the final divorce decree.

 After the divorce, Dr. Milligan continued to use his easement across Lot 13 for
picnicking, swimming, and general recreational purposes, which activities were enhanced by the
property's river access. He believed that the divorce decree left his easement in place; Ms.
Niebuhr believed that Lot 13 was no longer encumbered by the easement. Disputing Dr.
Milligan's right to continued use of the property, Ms. Niebuhr put a new combination lock on the
gate to keep her former husband off the property.

 Dr. Milligan sought injunctive relief, plus actual and exemplary damages for his
loss of the property's use. On May 27, 1997, the trial court granted a temporary injunction
ordering Ms. Niebuhr to remove the lock, which she did. Ms. Niebuhr then asked the court to
declare that the final decree of divorce in 1995 divested Dr. Milligan of any rights in Lot 13.

 The easement dispute was tried to the court in March 1998. In a declaratory
judgment signed April 27, 1998, the court held that the easement across Lot 13 was terminated
by the divorce decree; it further dissolved the temporary injunction and awarded court costs to Ms.
Niebuhr.

 Dr. Milligan brings nine points of error, first alleging that the court erred in holding
that his easement was terminated, and then complaining of other actions the court should have
taken in his favor because he should have prevailed. He concedes that unless we sustain his first
point of error, we need not address his remaining points.


An Agreed Divorce Decree is a Contract

 The agreed decree of divorce is a contract. We are to interpret its meaning by the
rules relating to the construction of contracts. See McPherren v. McPherren, 967 S.W.2d 485,
490 (Tex. App.--El Paso 1998, no writ).


When construing an agreement incident to divorce, a court must look to the
intentions of the parties as they are manifested in the written agreement. If a
written agreement is worded so that it can be given a certain or definite legal
meaning or interpretation, it is unambiguous.


Id. (citations omitted). The interpretation of an unambiguous contract is a question of law to be
determined by the court. See Myers v. Gulf Coast Minerals Management Corp., 361 S.W.2d 193,
196 (Tex. 1962); Texas Workers' Compensation Ins. Facility v. State Bd. of Ins., 894 S.W.2d 49,
52 (Tex. App.--Austin 1995, no writ). The court is "bound by the express stated intent of the
parties as manifested within the four corners of the instrument itself." Thompson v. Thompson,
500 S.W.2d 203, 207 (Tex. Civ. App.--Dallas 1973, no writ).

 The four corners of this agreed decree unambiguously express the parties' intent: 
Ms. Niebuhr is awarded "any and all interest" in Lot 13 as her sole and separate property and Dr.
Milligan "is hereby divested of all right, title, interest, and claim in and to such property." Dr.
Milligan is awarded "any and all interest" in the Peach Orchard as his sole and separate property,
and Ms. Niebuhr is "divested of all right, title, interest, and claim in and to" that property. The
decree does not mention the easement appurtenant to the Peach Orchard that burdened Lot 13.

 Appellant argues that an easement appurtenant is an interest in the dominant estate,
and therefore the award of the Peach Orchard to him includes the easement burdening Lot 13. We
disagree. An easement is an appurtenance to the dominant estate and an interest in the servient
estate. See Hidalgo & Cameron Counties Water Control & Improvement Dist. No. 9 v. Maverick
County Water Control & Improvement Dist. No. 1, 349 S.W.2d 768, 772 (Tex. Civ. App.--San
Antonio 1961, writ dism'd w.o.j.). This is because it gives the owner of the easement certain
rights in the use and enjoyment of the servient estate. While these rights may benefit the owner
of the dominant estate, ownership of the easement does not confer any additional interest in the
dominant estate because a fee simple owner already possesses the fullest interest possible in that
estate. See Hidalgo County Water Control & Improvement Dist. No. 16. v. Hippchen, 233 F.2d
712, 714 (5th Cir. 1956) (a person cannot have an easement in his own land since all the uses of
an easement are fully comprehended in his general right of ownership). Since an easement is not
an interest in the dominant estate, the language in the divorce decree awarding the Peach Orchard
to Dr. Milligan does not reserve any interest in the prior easement across Lot 13.

 Language elsewhere in the decree further clarifies that the parties did not intend for
Dr. Milligan to retain any rights in the easement. The decree contains a separate provision stating: 


Each party will live separately and apart from the other for the rest of his or her
life at any place or places that he or she may elect. Neither party will molest,
harass, annoy, injure, threaten, or interfere with the other party in any manner
whatsoever. Each party may carry on and engage in any employment, profession,
business, or other activity as he or she may deem advisable for his or her sole use
and benefit. Neither party will interfere with the use, ownership, enjoyment, or
disposition of any property now owned or hereafter acquired by the other.



(Emphasis added.) Furthermore, the agreement specifies that each party:


(a) is clearly informed of the facts relating to the subject matter of this agreement
and of the rights and liabilities of both parties;

(b) enters into this agreement voluntarily after receiving the advice of independent
counsel;

(c) has given careful and mature thought to the making of this agreement;

(d) has carefully read each and every provision of this agreement; and

(e) completely understands the provisions of this agreement, as to both the subject 

matter and the legal effect.



 Appellant urges that the intent to abandon an easement "must be established by clear
and satisfactory evidence," citing Dallas County v. Miller, 166 S.W.2d 922, 924 (Tex. 1943). 
However, Miller stands for the proposition that abandonment of an easement will not result from
non-use alone; instead, the "circumstances must disclose some definite act showing an intention
to abandon and terminate the right possessed by the easement owner." Id. In the present case,
the parties' joint signing of the divorce agreement was a definite act. The trial court correctly
determined that the parties' intention, as expressed in the four corners of that document, was that
Ms. Niebuhr hold Lot 13 unencumbered by any easement in favor of Dr. Milligan after the
divorce.

 We disagree with appellant's contention that it was Ms. Niebuhr's burden to
mention the easement if it was to be terminated by the agreement. To the extent that Dr. Milligan
intended to retain the easement in the face of language in the agreement that divested him of all
right, title, interest, and claim in and to Lot 13, it was his burden to express this contrary intent. 
No such intent can be gleaned from the four corners of the agreed divorce decree. Nor can Dr.
Milligan rely on any side-bar agreement that he was to continue to enjoy use of the easement, since
the consent decree specifically states that it supercedes any and all other agreements, either oral
or in writing, and that it contains the entire agreement of the parties.

 This easement dispute is nothing more than an attempt to modify the division of
property clearly expressed in the parties' agreed decree of divorce. (3) That final decree, which was
not appealed, may not now be amended by asking the court to "imply" an easement that was not
expressly reserved to Dr. Milligan in that agreed settlement. The relief sought would constitute
a collateral attack on the prior decree. A court may not change the division of property made in
the decree of divorce. See Tex. Family Code Ann. § 9.007 (West 1998). The trial court properly
found, as a matter of law, that the easement claimed by Dr. Milligan was terminated by the final
decree of divorce. (4) We overrule appellant's first point of error.

 Having overruled the first point of error, we need not address appellant's remaining
points.


CONCLUSION


 The trial court did not err in concluding that the agreed decree of divorce
terminated Dr. Milligan's easement across Lot 13. We therefore affirm the trial court's judgment.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: February 25, 1999

Do Not Publish Released for publication March 25, 1999. Tex. R. App. P. 47.3(c).
1. Although Judge James C. Onion presided over the trial in this cause, the record indicates that
Judge Robison signed the final judgment on Judge Onion's behalf.
2. Lots 13 and 14 are two tracts in a series of "finger lots," narrow strips of land providing
access to the San Marcos River from the east; their common border is a long boundary running
west toward the river, dividing Lot 14 on the north from Lot 13 on the south. The narrow eastern
borders of both lots touch a portion of the Peach Orchard's western boundary.
3. The record indicates that the Peach Orchard has access to the road, and neither party claims
the existence of an implied easement by necessity in this case.
4. We decide this issue as a matter of law and do not consider the late-filed findings of fact and
conclusions of law, which appellant concedes are not relevant to his argument on appeal.




 Appellant urges that the intent to abandon an easement "must be established by clear
and satisfactory evidence," citing Dallas County v. Miller, 166 S.W.2d 922, 924 (Tex. 1943). 
However, Miller stands for the proposition that abandonment of an easement will not result from
non-use alone; instead, the "circumstances must disclose some definite act showing an intention
to abandon and terminate the right possessed by the easement owner." Id. In the present case,
the parties' joint signing of the divorce agreement was a definite act. The trial court correctly
determined that the parties' intention, as expressed in the four corners of that document, was that
Ms. Niebuhr hold Lot 13 unencumbered by any easement in favor of Dr. Milligan after the
divorce.

 We disagree with appellant's contention that it was Ms. Niebuhr's burden to
mention the easement if it was to be terminated by the agreement. To the extent that Dr. Milligan
intended to retain the easement in the face of language in the agreement that divested him of all
right, title, interest, and claim in and to Lot 13, it was his burden to express this contrary intent. 
No such intent can be gleaned from the four corners of the agreed divorce decree. Nor can Dr.
Milligan rely on any side-bar agreement that he was to continue to enjoy use of the easement, since
the consent decree specifically states that it supercedes any and all other agreements, either oral
or in writing, and that it contains the entire agreement of the parties.

 This easement dispute is nothing more than an attempt to modify the division of
property clearly expressed in the parties' agreed decree of divorce. (3) That final decree, which was
not appealed, may not now be amended by asking the court to "imply" an easement that was not
expressly reserved to Dr. Milligan in that agreed settlement. The relief sought would constitute
a collateral attack on the prior decree. A court may not change the division of property made in
the decree of divorce. See Tex. Family Code Ann. § 9.007 (West 1998). The trial court properly
found, as a matter of law, that the easement claimed by Dr. Milligan was terminated by the final
decree of divorce. (4) We overrule appellant's first point of error.

 Having overruled the first point of error, we need not address appellant's remaining
points.


CONCLUSION


 The trial court did not err in concluding that the agreed decree of divorce
terminated Dr. Milligan's easement across Lot 13. We therefore affirm the trial court's judgment.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: February 25, 1999

Do Not Publish Released for publication March 25, 1999. Tex. R. App. P. 47.3(c).
1. Although Judge James C. Onion presided over the trial in this cause, the record indicates that
Judge Robison signed the final judgment on Judge Onion's behalf.
2. Lots 13 and 14 are two tracts in a series of "finger lots," narrow strips of land providing
access to the San Marcos River from the east; their common border is a long boundary running
west toward the river, dividing Lot 14 on the north from Lot 13 on the south. The narrow eastern
borders of both lots touch a portion of the Peach Orchard's western boundary.
3. The record indicates tha