Janet Priess MARSHALL (Formerly Janet G. Priess), Appellant,

v.

Jarrell Joe PRIESS, Appellee.

No. 14–99–01399–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 31, 2002.

Leslie Werner de Soliz, Victoria, for appellant.

Charles J. Michael, Houston, for appellee.

Panel consists of Chief Justice BRISTER and Justices FOWLER and SEYMORE.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant Janet Priess Marshall (formerly Janet G. Priess) appeals from orders amending previously entered qualified domestic relations orders ("QDROs"). These orders relate to the division and distribution of retirement benefits after Marshall's divorce from appellee Jarrell Joe Priess. Marshall contends that (1) Priess's motion to amend the QDROs was time-barred, (2) the trial court lacked jurisdiction to enter the amended orders, (3) the amended orders substantively changed the division of property ordered in the divorce decree and original QDROs, and (4) the trial court abused its discretion in entering the amended QDROs without due regard for Marshall's property rights. For the reasons discussed below, we affirm in part and reverse and remand in part.

## FACTS

Appellant Janet Priess Marshall ("Marshall") and appellee Jarrell Joe Priess ("Priess") were married on June 23, 1957. On December 28, 1995, Priess filed for divorce. Marshall answered and countersued for divorce. During the pendency of the proceeding, the parties entered into a mediated settlement agreement. On June 19, 1997, the court granted the divorce in open court, and a final consent decree of divorce and judgment was signed August 15, 1997.

The decree recited that the parties "have agreed and consented to the terms of this proposed order pursuant to a medi-

ated settlement regarding property, its character and division." The decree did not include a copy of the settlement agreement. However, the decree incorporated exhibits listing each party's award of community property. The decree further provided that both parties were to sign QDROs, and the exhibits included a statement that the retirement benefits awarded "shall be apportioned and divided pursuant to the necessary Qualified Domestic Relations Order or such other document as may be required and approved by the respective Plan Administrator."

On September 30, 1997, the court entered the two orders at issue here: (1) a Court Order Acceptable for Processing (the "COAP"), relating to Priess's Civil Service Retirement System ("CSRS") benefits, and (2) a Qualified Domestic Relations Order (the "QDRO"), relating to Marshall's retirement benefits under her San Jacinto Junior College 403(b) Plan.[1] The COAP provided as follows:

5. [Marshall] is entitled to a FIFTY AND NO/100 PERCENT (50.00%) of [Priess's] gross monthly annuity under the CSRS, unreduced for any option that may be selected by the Member.

\* \* \*

9. Under section 8341(h)(1) of title 5, United States Code, Former Spouse is awarded the maximum possible former spouse survivor annuity under the CSRS unless Member remarries before retirement. If [Priess] remarries before retirement, ... [Marshall] is awarded a former spouse survivor annuity under the CSRS. The amount of the

---

1. The court also entered a QDRO regarding Priess's military retirement benefits, but that order is not at issue here.

former spouse survivor annuity will be equal to FIFTY AND NO/100 PERCENT (50.00%).

10. The date of marriage was June 23, 1957 and the date of divorce was June 19, 1997.

The COAP also contained several other requirements pertinent to this appeal: (1) cost-of-living allowances applied to Priess's benefits were to be applied to Marshall's share; (2) Priess was designated a constructive trustee of any benefits he received that were due to Marshall; and (3) the specified benefit was payable to Marshall and was to commence as soon as administratively feasible upon Priess's retirement.

The QDRO relating to Marshall's retirement benefits under the San Jacinto Junior College 403(b) Plan provided the following:

5. [Priess] is hereby assigned FIFTY AND NO/100 PERCENT (50%) of [Marshall's] right, title and interest in and to the Plan as the first day of the month following the date of [Priess's] retirement from his employment with the United States Government and his commencement of benefits under the Civil Service Retirement System. In order for [Priess] to commence benefits under the Plan, [Priess] shall notify the Investment Companies that maintain the participant's investments under the Plain that he has retired from his employment with the United States Government and that he has commenced receiving benefits under the Civil Service Retirement System.

6. As soon as administratively practical after the Investment Companies have determined that this Order is a qualified domestic relations order and [Priess] has notified the Investment Companies that [Priess] has retired from his employment with the United States Government and has commenced benefits under the Civil Service Retirement System, the Plan shall establish a separate bookkeeping account for [Priess] to represent [Priess's] interest in the Plan ("[Priess's] Account"). [Priess] shall be entitled to direct the investment of [Priess's] Account among the Plan's investment funds to the extent permitted by, and in accordance with, the Plan's investment designation procedures.

7. Distributions under Plan are to begin to [Priess], at the option of [Priess], on or as soon as administratively practical after the date on which the Investment Companies have determined that this Order is qualified and has established [Priess]'s Account or at such later times as [Priess] may elect in writing to the Investment Companies. Distributions shall be made in any form allowed under the Plan, subject only to the Plan requirements.

## PROCEDURAL BACKGROUND

Priess did not appeal the divorce decree or the entry of the COAP and QDRO. However, two years later, on September 20, 1999, Priess filed a "Motion to Enter Amended Qualified Domestic Relations Orders." In this motion, he sought two things: (1) to amend the COAP to reflect that Marshall's 50% interest in his benefits was to be determined as of the date of divorce, rather than the date of retirement; and (2) to amend the QDRO to provide that he can begin receiving benefits as of the date of Marshall's retirement, rather than his retirement.

In support of his motion, Priess attached a letter from the U.S. Office of Personnel

Management ("OPM") notifying him that, as the COAP was written, Marshall would receive 50% of Priess's gross retirement benefit, including benefits accrued after the divorce. The OPM stated that it intended to honor the court's order and the survivor annuity award. The OPM did not state that the order was defective or that it could not be implemented.

The trial court conducted several hearings on the motion. Neither Priess nor Marshall testified substantively at any of the hearings, and no other evidence was introduced to show the parties' intentions regarding the division of property under the settlement agreement. At one of the hearings, the individual who prepared the original orders, Rick Johnson, was present and was questioned by the trial court. The trial court instructed Johnson to draft additional orders to reflect that Marshall's entitlement to Priess's CSRS benefits was limited to the benefits accrued as of the date of divorce, and to provide that Priess could access his interest in Marshall's retirement plan as the plan permitted, rather than at his retirement. The trial court instructed the parties' counsel to come back the next day for a hearing on the revised orders.

The next day, on November 9, 1999, the court was presented with five orders: one amended COAP relating to the Civil Service benefits, and four amended QDROs separately addressing each of the investments in Marshall's 403(b) Plan (which had previously been addressed in the one original QDRO). In addition to the requested revisions, the COAP included additional language requiring Marshall to pay the benefit premium for the survivor annuity. The court signed all of the orders as written. Marshall timely appealed from the orders.

After the instant appeal was filed, the trial court held another hearing at which it considered proposed findings of fact and conclusions of law. As finally entered, the trial court's findings of fact include the following:

1. That on or about June 19, 1997, Janet G. Priess and Jarrell Joe Priess were divorced in open court and on July 25, 1997, a Decree of Divorce was signed by the trial court.

2. That pursuant to the subject Decree of Divorce, each party was awarded a 50% community property interest in the other party's retirement plans and accounts.

The trial court also entered the following conclusions of law:

1. That this court has jurisdiction of the parties and of the subject matter of this case.

2. That this court has continuing, exclusive jurisdiction to enter the subject five (5) Qualified Domestic Relations Orders entered on November 9, 1999.

3. That the original Qualified Domestic Relations Orders entered by the trial court on September 30, 1997 did not properly set times for commencement of benefits ordered by the court.

4. That the changes reflected in the five (5) Qualified Domestic Relations Order [sic] entered on November 9, 1997,[2] were made in order to set dates for commencement of benefits in accordance with the trial court's division of retirement benefits as set forth in the Decree of Divorce.

2. The reference to 1997 is probably a typographical error, since the date the five amended orders were entered was November 9, 1999.

5. That all legal prerequisites to the entry of the subject five (5) Qualified Domestic Relations Orders have been met.

The trial court made no findings or conclusions regarding (1) the intent of the parties to the original agreement, (2) why Marshall was to pay the survivor benefit premium, or (3) why a change was made to allow Priess to access his interest in Marshall's retirement benefits upon her retirement rather than his. Finally, the trial court entered no findings or conclusions that the divorce decree or the original COAP and QDRO were ambiguous or not specific enough to be enforced by contempt.

## ANALYSIS

Marshall raises four issues on appeal. In her first issue, she contends that Priess's motion is time-barred by Texas Family Code section 9.003(a) and therefore the court's conclusions of law numbers 1, 2, and 5 (relating to the court's jurisdiction) are erroneous as a matter of law. In her second issue, she contends that the trial court lacked jurisdiction to amend QDROs entered after the divorce. She claims that, if no plan administrator has complained that the QDROs are defective, Texas Family Code section 9.101 does not give a trial court the authority to amend qualified orders that were enforceable when rendered. Consequently, Marshall again urges that the trial court's conclusions of law numbers 1, 2, and 5 are erroneous. Marshall's third and fourth issues complain about the amended orders. In her third issue, Marshall contends that the trial court's amended orders are unenforceable because they impermissibly changed the substantive division of property made in the final decree

of divorce and implemented in the original COAP and QDRO. In her fourth issue, Marshall contends that the trial court abused its discretion in entering the amended orders without due regard for her property rights. We will address the jurisdictional challenges raised in Marshall's first and second issues before addressing the substantive complaints raised in her third and fourth issues.

### 1. The Jurisdictional Issues

▆▆▆ Marshall's first two issues challenge the trial court's authority to enter the amended orders. Marshall first contends this is an action to enforce a prior judgment; as such, it is barred by the limitations period contained in Texas Family Code section 9.003.

Section 9.003 provides as follows:

(a) A suit to enforce the division of tangible personal property in existence at the time of the decree of divorce or annulment must be filed before the second anniversary of the date the decree was signed or becomes final after appeal, whichever date is later, or the suit is barred.

(b) A suit to enforce the division of future property not in existence at the time of the original decree must be filed before the second anniversary of the date the right to the property matures or accrues or the decree becomes final, whichever date is later, or the suit is barred.

TEX. FAM.CODE ANN. § 9.003 (Vernon 1998).

In response, Priess argues that the suit is not one for enforcement, but was brought pursuant to the court's continuing jurisdiction under Family Code sections 9.101, 9.104, and 9.105 to render an enforceable QDRO.[3] Additionally, citing sec-

---

**3.** Section 9.101 provides as follows:

(a) Notwithstanding any other provisions of this chapter, the court that rendered a final

tion 9.006(b),[4] Priess argues that the court retains power to clarify the divorce decree. Alternatively, citing *Harvey v. Harvey,* 905 S.W.2d 760, 763 (Tex.App.-Austin 1995, no writ), Priess argues that his claims are for retirement benefits that are future property and thus are not time-barred under section 9.103(b).

Marshall replies that sections 9.101, 9.104, and 9.105 do not apply because those provisions do not give a trial court authority to amend QDROs that were enforceable when rendered, and no plan administrator has complained about the QDRO as section 9.104 requires. Marshall also asks us to reject the *Harvey* court's holding. Consequently, Marshall urges, Priess's suit is one to enforce the court's decree and therefore is governed by the limitations provision of section 9.003.

■■■ The question of jurisdiction is an issue of law we review de novo. *Dechon v. Dechon,* 909 S.W.2d 950, 955–56 (Tex.App.-El Paso 1995, no writ). Under Texas Family Code section 9.002, the court rendering the decree of divorce retains the power to enforce the property division. TEX. FAM.CODE ANN. § 9.002; *Dechon,* 909 S.W.2d at 956. The court also may render further orders to assist in the implementation of or to clarify the prior order. TEX. FAM.CODE ANN. § 9.006(a); *see also McPherren v. McPherren,* 967 S.W.2d 485, 490 (Tex.App.-El Paso 1998, no pet.); *Dechon,* 909 S.W.2d at 956. These orders may more precisely specify how the previously ordered property division will be implemented so long as the substantive division of the property is not altered. TEX. FAM.CODE ANN. at § 9.006(b); *see also McPherren,* 967 S.W.2d at 490; *Dechon,* 909 S.W.2d at 956. On a finding by the court that the original form of the division of property is not specific enough to be enforceable by contempt, the court may

---

decree of divorce or annulment or another final order dividing property under this title retains continuing, exclusive jurisdiction to render an enforceable qualified domestic relations order or similar order permitting payment of pension, retirement plan, or other employee benefits divisible under the law of this state or of the United States to an alternate payee or other lawful payee. (b) Unless prohibited by federal law, a suit seeking a qualified domestic relations order or similar order under this section applies to a previously divided pension, retirement plan, or other employee benefit divisible under the law of this state or of the United states, whether the plan or benefit is private, state, or federal.
TEX. FAM.CODE ANN. § 9.101 (Vernon 1998).
Section 9.104 provides as follows:
If a plan administrator or other person acting in an equivalent capacity determines that a domestic relations order does not satisfy the requirements of a qualified domestic relations order or similar order, the court retains continuing, exclusive jurisdiction over the parties and their property to the extent necessary to render a qualified domestic relations order.

TEX. FAM.CODE ANN. § 9.104 (Vernon 1998).
Section 9.105 provides:
The court shall liberally construe this subchapter to effect payment of retirement benefits that were divided by a previous decree that failed to contain a qualified domestic relations order or similar order or that contained an order that failed to meet the requirements of a qualified domestic relations order or similar order.
TEX. FAM.CODE ANN. § 9.105 (Vernon 1998).

4. Section 9.006 provides in its entirety:

(a) Except as provided by this subchapter and by the Texas Rules of Civil Procedure, the court may render further orders to enforce the division of property made in the decree of divorce or annulment to assist in the implementation of or to clarify the prior order.
(b) The court may specify more precisely the manner of effecting the property division previously made if the substantive division of property is not altered or changed.
(c) An order of enforcement does not alter or affect the finality of the decree of divorce or annulment being enforced.
TEX. FAM.CODE ANN. § 9.006 (Vernon 1998).

render a clarifying order setting forth specific terms to enforce compliance with the original division of property. TEX. FAM. CODE ANN. § 9.008(b).[5] The remedy of clarification applies not only to property divisions specifically set forth in the decree but to those divisions which are merely approved and incorporated by reference in the decree. *Dechon,* 909 S.W.2d at 956. However, a court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce. TEX. FAM.CODE ANN. § 9.007(a); *see also McPherren,* 967 S.W.2d at 490; *Dechon,* 909 S.W.2d at 956. An order that alters the substantive division of property in a final divorce decree is beyond the power of the divorce court and is unenforceable. TEX. FAM.CODE ANN. § 9.007(b).

■ Here, the divorce decree expressly contemplated that QDROs would be entered to effectuate the property division specified in the decree, and the trial court entered the original COAP and QDRO for that purpose.[6] Although Priess's motion was entitled a "Motion to Enter Amended Qualified Domestic Relations Order," we interpret the motion as an attempt to clarify the divorce decree and the original COAP and QDRO, a matter over which the trial court had continuing jurisdiction. *See McPherren,* 967 S.W.2d at 490; *Dechon,* 909 S.W.2d at 956; *see also McLaurin v. McLaurin,* 968 S.W.2d 947, 950 (Tex.App.-Texarkana 1998, no pet.) (distinguishing between an order clarifying a prior order and one designed to implement the prior order). Further, we hold that, because Priess sought a clarification of the divorce decree and the original COAP and QDRO, the statute of limitations provision contained in section 9.003 does not apply. *See Dechon,* 909 S.W.2d at 961–62.[7]

We overrule Marshall's first and second issues.

## 2. The Substantive Issues

We now turn to Marshall's third and fourth issues. She complains that (1) the trial court's amended COAP and QDROs impermissibly changed the divorce de-

---

5. In its entirety, section 9.008 provides as follows:
    (a) On the request of a party or on the court's own motion, the court may render a clarifying order before a motion for contempt is made or heard, in conjunction with a motion for contempt or on denial of a motion for contempt.
    (b) On a finding by the court that the original form of the division of property is not specific enough to be enforceable by contempt, the court may render a clarifying order setting forth specific terms to enforce compliance with the original division of property.
    (c) The court may not give retroactive effect to a clarifying order.
    (d) The court shall provide a reasonable time for compliance before enforcing a clarifying order by contempt or in another manner.
    TEX. FAM.CODE ANN. § 9.008 (Vernon 1998).

6. Priess argues that the original COAP and QDRO are inconsistent with the division of property contained in the divorce decree and

the mediated settlement agreement. However, the settlement agreement is not in the record, and we note that Priess did not appeal the divorce decree or the entry of the original COAP and QDRO. The trial court has no authority to substantively alter an allocation of property ordered in a decree over which its plenary jurisdiction has expired. *See In the Matter of Marriage of Reinauer,* 946 S.W.2d 853, 861 (Tex.App.-Amarillo 1997, writ denied); *Pearcy v. Pearcy,* 884 S.W.2d 512, 514 (Tex.App.-San Antonio 1994, no writ).

7. Because we hold that the statute of limitations does not apply to a procedure to clarify a prior decree of divorce, we do not reach Priess's alternative argument that the retirement benefits at issue are future property and therefore his action was timely under section 9.003(b). We also note that once clarification is obtained, the statute of limitations applies to the enforcement procedure itself. *Dechon,* 909 S.W.2d at 962.

cree's substantive division of the property as implemented in the original QDRO and COAP, and (2) the trial court abused its discretion in entering the amended orders without due regard for Marshall's property rights. The substantive matters at issue involve three areas: (1) the amendment of the COAP to specify that Marshall's interest in Priess's CSRS benefits is limited to that accrued as of the date of divorce rather than the date of retirement; (2) the amendment of the COAP to require Marshall to pay the survivor benefit premium; and (3) the amendment of the QDRO to enable Priess to access Marshall's retirement plan whenever the plan permits rather than at Priess's retirement.

As discussed above, the trial court has no authority to change the property division in a final divorce decree, but in appropriate circumstances it may issue a clarifying order or other order to assist in implementation of the original order. *See* TEX. FAM.CODE ANN. § 9.006(a); *Wright v. Eckhardt*, 32 S.W.3d 891, 894 (Tex.App.-Corpus Christi 2000, no pet.); *McPherren*, 967 S.W.2d at 490. Further, courts have held that a clarification order may only be made upon a finding, express or implied, that the original form of the division of property lacks sufficient specificity to be enforced by contempt. *McPherren*, 967 S.W.2d at 491; *Dechon*, 909 S.W.2d at 956. While the trial court here entered findings of fact and conclusions of law, it did not enter a finding that the original decree or the original QDROs lacked sufficient specificity to be enforced by contempt. Therefore, we will compare the original orders and the amended orders to determine whether the amendments were within the court's authority.

*a. The Amended COAP: Limiting Marshall's interest in Priess's CSRS annuity to that accrued as of the date of divorce rather than the date of his retirement.*

■ Priess argues that he and Marshall agreed to a 50–50 division of their community interest in his CSRS retirement benefits in the divorce decree, and that the divorce decree reflects this agreement. Yet, in contravention of the decree, he claims that the original COAP impermissibly awards Marshall an additional interest in his separate property acquired after divorce. He claims it awards an additional interest because it awards Marshall a 50% interest in his gross monthly annuity, not as of the date of divorce, but as of the later date of his retirement.

■ Under Texas law, pension benefits accruing for services rendered after a divorce are not part of the parties' community estate subject to a just-and-right division. *See Berry v. Berry*, 647 S.W.2d 945, 947 (Tex.1983); *Bloomer v. Bloomer*, 927 S.W.2d 118, 122 (Tex.App.-Houston [1st Dist.] 1996, writ denied). Marshall does not dispute that the parties intended to divide only the community interest in the CSRS retirement benefits, but argues that it was not necessary to amend the original COAP at all because it already contained the date of divorce. We do not find Marshall's argument persuasive and agree with Priess.

The decree and its exhibits confirm that the parties intended to divide only their community interests. The decree's Exhibits A and B are entitled "COMMUNITY PROPERTY AWARDED TO [Marshall or Priess]." Further, during the initial hearing in this matter, the trial court recognized that it could award the post-decree separate property retirement benefits if the parties agreed to it, but Marshall's lawyer confirmed that such was not the intent. The trial court also made a specific finding of fact that "each party was awarded a 50% community property inter-

est in the other party's retirement plans and accounts." [8]

In contrast to these indications of limitation, the original COAP is broadly written and the OPM interpreted it broadly. The original COAP provided that "[Marshall] is entitled to a FIFTY AND NO/100 PERCENT (50.00%) of [Priess's] gross monthly annuity under the CSRS, unreduced for any option that may be selected by the Member." This language does not, on its face, limit Marshall's interest to the community interest as of the date of divorce. Further, the OPM notified Priess that, as the COAP was written, Marshall would receive 50% of Priess's gross retirement benefit (not restricted to benefits pre-divorce). Thus, the original COAP conflicts with the portion of the decree that awarded Marshall an interest in Priess's retirement benefit. And, contrary to Marshall's argument on appeal, the broadly-written COAP was being interpreted broadly even though it stated the date of divorce.

Unlike the original COAP, the amended COAP limits Marshall's interest to the community interest provided for in the divorce decree:

> 5. [Marshall] is entitled to FIFTY AND NO/100 PERCENT (50.00%) of [Priess's] gross monthly annuity under the CSRS, multiplied by a fraction the numerator of which is the number of months [Priess] and [Marshall] were married during which [Priess] was employed by the United States Government (including credits for service in the United States Military) as of June 19, 1997 and the denominator of which is the number of months [Priess] was employed by the United States Government (including credits for service in the United States Military) as [of] June 19, 1997, unreduced for any option that may be selected by [Priess]. The Office of Personnel Management is specifically directed not to apply salary adjustments occurring after June 19, 1997, in computing [Marshall's] share of the gross monthly annuity. The Office of Personnel Management is specifically directed to include any unused sick leave which had accrued prior to June 19, 1997 in computing [Marshall's] share of the gross monthly annuity. When cost-of-living allowances (COLAs) are applied to Member's retirement benefits, the same COLA applies to [Marshall's] share.

We find no error in the entry of this portion of the amended COAP. The parties here agreed to divide only their community interests in the other's retirement benefits. And, at the trial court hearings, the court specifically found that to be the case. Therefore, we hold that the trial court properly clarified the original COAP. [9]

b. *The Amended COAP: Requiring Marshall to pay the survivor's benefit premium.*

---

8. Marshall does not attack the trial court's finding of fact number 2 regarding the division of community property, and does not expressly argue that the specific change is improper. Indeed, at oral argument, Marshall conceded that the change was consistent with the property division in the original decree.

9. We note that this case is distinguishable from this court's opinion in *Pate v. Pate*, 874 S.W.2d 186 (Tex.App.-Houston [14th Dist.] 1994, writ denied), in which we reversed a trial court's order amending a QDRO to provide that the former wife was only entitled to 50% of the former husband's retirement benefits accrued through the date of divorce rather than the date of retirement. In that case, the provision of the decree at issue included a formula by which the wife's benefits were to be determined, and specified that the community benefit was to be determined by multiplying the husband's normal retirement benefit "at retirement" by the formula. No such unambiguous language appears in the original QDRO here.

■ Next we consider Marshall's complaint that the trial court's amended COAP, in violation of section 9.007 of the Family Code, substantively changed the originally agreed division of property. Specifically, Marshall claims a substantive change was made when the amended COAP required her to pay the premiums for the survivor annuity benefit option. As we explain below, we agree that the trial court exceeded its authority because it made a substantive change.

The divorce decree did not provide for an award of survivor annuity benefits, but such an award was included in the original COAP, which Priess did not appeal. Therefore, we compare the original COAP to the amended COAP to determine whether an impermissible substantive change was made. As set forth above, the relevant language of the original COAP provided as follows:

> 5. [Marshall] is entitled to a FIFTY AND NO/100 PERCENT (50.00%) of [Priess's] gross monthly annuity under the CSRS, unreduced for any option that may be selected by the Member.

> \* \* \*

> 9. Under section 8341(h)(1) of title 5, United States Code, Former Spouse is awarded the maximum possible former spouse survivor annuity under the CSRS unless Member remarries before retirement. If [Priess] remarries before retirement, ... [Marshall] is awarded a former spouse survivor annuity under the CSRS. The amount of the former spouse survivor annuity will be equal to FIFTY AND NO/100 PERCENT (50.00%).

In contrast, the trial court's amended COAP added the following language:

> 7. [Marshall's] share of Member's employee annuity will be reduced by the amount of the costs associated with providing the former spouse survivor annuity awarded in Paragraphs 8 and 9 below.[10]

Thus, in the original COAP, Marshall was awarded the maximum possible former spouse survivor annuity unless Priess remarried before retirement. In that event, Marshall was awarded a 50% interest in a former spouse annuity. Marshall was not required to pay for this benefit. However, in the amended COAP, Marshall had to pay to receive the benefit she was previously awarded. This was a substantive change that was beyond the authority of the trial court to make. *See, e.g., In re Marriage of Reinauer*, 946 S.W.2d at 862 (holding that trial court's award of interest on former wife's share of retirement proceeds substantively modified former husband's duties under original decree and therefore exceeded the trial court's jurisdiction); *Valencia v. Valencia*, 792 S.W.2d 565, 567 (Tex.App.-El Paso 1990, no writ) (holding that trial court's imposition of an obligation to pay $13,100.00 when no such obligation previously existed impermissibly changed, modified and altered provisions of divorce decree).

We therefore sustain Marshall's third and fourth issues with regard to the survivor benefit premium, and hold that the addition of the requirement that she pay the survivor benefit premium constitutes a substantive change that was beyond the trial court's authority to award. Accordingly, we reverse that portion of the trial court's order.

**c. *Amended QDROs: Making Priess's interests in Marshall's 403(b)***

---

10. Paragraphs 8 and 9 provided formulas for the calculation of the amount of the survivor annuity Marshall is to receive based on whether or not Priess remarries and elects to provide a survivor annuity for a new spouse after retirement.

*retirement funds available at her retirement rather than his retirement.*

The final complaint we address concerns the changes made in the amended QDROs that allow Priess to receive his portion of Marshall's 403(b) retirement benefits at her retirement. The original QDRO provided that Priess could receive his portion upon his retirement. Marshall claims that, once again, this was a substantive change that the court was not authorized to make. Marshall contends that permitting Priess to have immediate access to her retirement fund, when she has already begun receiving withdrawals from it, represents a significant departure from the original property division, and the trial court abused its discretion in entering the amended orders without due regard for her property rights. Marshall's argument raises three specific issues relating to the original QDRO and the amended QDROs: (1) the date on which the retirement benefits were to be divided, (2) the date on which a separate account for Priess's interest was to be created, and (3) the date when Priess may begin withdrawals of his interest. We will address each in turn.

(i) *Determining benefits at the date of divorce.*

■ The language of the original QDRO specifically provided that Priess's interest was assigned "as [of] the first day of the month following the date of [Priess's] retirement from his employment . . . and his commencement of benefits under the Civil Service Retirement Plan." In contrast, each of the four amended QDROs specify that Priess's interest is to be assigned to him as of June 19, 1997, the date of divorce. The trial court's clarification that the determination of Priess's interest in Marshall's retirement benefits should be made as of the date of divorce, rather than the date of Priess's retirement, was necessary to aid in the implementation of the

division of community property made in the original divorce decree. This is the same issue we addressed with regard to the amended COAP and Marshall's interest in Priess's retirement account. Her interests should have been set as of the date of divorce, not a later date. Likewise, Priess's interests were set as of the date of divorce, not upon his retirement. As we did with the amended COAP, we find this to be a proper clarification.

The language also is consistent with the trial court's conclusions of law numbers 3 and 4 that the QDROs originally entered by the trial court did not properly set times for commencement of benefits ordered by the court and that the changes reflected in the amended orders were to set dates for commencement of benefits in accordance with the trial court's division of retirement benefits as set forth in the divorce decree. Thus, the language in each of the amended QDROs specifying that Priess is assigned 50% of Marshall's right, title, and interest in the investments in her 403(b) account as of June 19, 1997, constitutes a proper clarification that was within the trial court's authority. As discussed below, this clarification was also a necessary adjunct to the language of the amended QDROs relating to the establishment of a separate account for Priess's interest.

(ii) *Establishing a separate account for Priess's interest.*

■ Not only did the original QDRO assign Priess's interest on retirement instead of the date of divorce, it also prohibited the immediate creation of a separate account for Priess's interest in the plan's investments. Under the original QDRO, a separate account was not to be created until Priess notified the managers of Marshall's investments that he was retired and had begun receiving benefits under the CSRS. This delay in the creation of his

separate account prevented Priess from identifying and managing his interest in the plan's investments post-divorce. This problem was corrected in the amended QDROs. These documents state that Priess's interest is assigned as of June 19, 1997, and a separate account is to be set up as soon as administratively practical after the investment manager determines the order is a qualified domestic relations order.[11] Further, the amended orders specify that Press shall be entitled to direct the investment of his account among the plan's investment funds to the extent permitted by the plan's investment procedures.

Marshall contends that there was not a problem with the original QDRO. While the divorce decree did not specify the date on which the plan was to be divided, she contends that this division "normally occurs" as of the date of divorce. From this assumption, Marshall argues that the original QDRO provided that the entities managing her investments were to make distributions to Priess's separate account from Marshall's plan as soon as practical after the QDRO was qualified as such, unless otherwise instructed by Priess. Because Priess never made an election, Marshall asserts, he should not be able to complain of the effects of his own inaction. Further, she argues that, if implemented, the amended QDROs would result in an unequal division of assets. Although Marshall did not present to the trial court any evidence of the amounts in her retirement plan or the date of her retirement, she argues that, in reliance on Priess's failure to elect to receive distributions, she retired on August 31, 1997, and began withdrawing from the plan. Consequently, she

maintains, she will receive less than Priess if the plan is divided as of the date of divorce.

We cannot agree with Marshall's interpretation of the original QDRO. The plain language of the original QDRO makes it clear that a separate account could not be established for Priess's interest until after he retired:

> 6. As soon as administratively practical after the Investment Companies have determined that this Order is a qualified domestic relations order *and [Priess] has notified the Investment Companies that [Priess] has retired from his employment with the United States Government and had commenced benefits under the Civil Service Retirement System, the Plan shall establish a separate bookkeeping account for [Priess] to represent [Priess's] interest in the Plan ("[Priess's] Account").* [Priess] shall be entitled to direct the investment of [Priess's] Account among the Plan's investment funds to the extent permitted by, and in accordance with, the Plan's investment designation procedures.

Further, the original QDRO provided that distributions could not occur until Priess retired because, as noted in the previous section, Priess's interest was not even assigned until his retirement:

> 7. Distributions under Plan are to begin to [Priess], at the option of [Priess], on or as soon as administratively practical after the date on which the Investment Companies have determined that this Order is qualified and has established [Priess]'s Account or at such later times as [Priess] may elect in writing to

---

11. In addition, three of the four amended QDROs, the VALIC Tax-deferred Savings Account, the Fidelity Investment Tax-deferred Savings Account, and the Vanguard Group Tax-deferred Savings Account instruct the plan administrator to adjust Priess's interest in the plan to reflect his proportionate share of the investment earnings, gains and losses of the plan's assets and the administrative expenses of the plan from the period after June 19, 1997 until Priess's interest has been segregated in the plan.

the Investment Companies. Distributions shall be made in any form allowed under the Plan, subject only to the Plan requirements.

Thus, the only election Priess could make was to either (a) receive distributions on or as soon as administratively practical after the date the order is qualified *and* Priess's account had been established (which could have occurred only after he retired), or (b) at such *later times* as Priess may elect in writing. Because Priess has apparently not retired, separate accounts to hold Priess's 50% community interest in each of the plan's investments have never been established and Priess has been prevented from managing his interest in the investments. Contrary to Marshall's argument, there was nothing for him to elect. Consequently, we hold that the trial court's subsequent amendment was a clarification and assisted in the implementation of the trial court's original property division. Further, Marshall cannot complain on appeal of alleged harm that will occur to her when there is no evidence in the record to support this argument.

(iii) *Permitting Priess to access his interest prior to his retirement.*

■ We conclude differently as to the change permitting Priess to withdraw his interest in her retirement plan as the plan permits rather than at his retirement, as the original QDRO provided. As we have already noted, the original QDRO did not permit Priess to access his interest in Marshall's retirement plan until his retirement.

Comparing the language of the original QDRO to the amended QDROs, we hold that the trial court's change to the amended QDROs permitting Priess to access his interest in Marshall's retirement plan prior to his retirement constituted an impermissible substantive change that the trial court was not authorized to make. We therefore sustain Marshall's third and fourth issues with regard to this aspect of the amended QDROs, reverse the trial court's orders and remand the matter to the trial court for further hearing and the entry of amended orders consistent with this opinion.