

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

### No. 02-20-00297-CV
_____

SHAHRAM SHAKOURI, Appellant

V.

FARIBA BADIYAN SHAKOURI, Appellee

---

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-354200-03

---

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

**MEMORANDUM OPINION**

Appellant Shahram Shakouri appeals the trial court's issuance of two qualified domestic relations orders (QDROs). The QDROs relate to the division and distribution of retirement benefits set out in the 2011 divorce decree between Shakouri and his ex-wife Fariba Badiyan. Shakouri contends that (1) the trial court lacked jurisdiction to enter the QDROs, (2) the QDROs substantively changed the division of property ordered in the divorce decree, (3) the trial court abused its discretion by denying his motion for continuance, and (4) that Badiyan committed a fraud on the trial court to obtain the 2011 divorce decree. For the reasons discussed below, we affirm the trial court's judgment.

## I.    Facts

Shakouri and Badiyan were married in 1978. On July 30, 2003, Badiyan filed for divorce. Over the next eight years, Shakouri and Badiyan engaged in extensive litigation but were eventually divorced in June of 2011. During the eight years of litigation, the trial court signed three final divorce decrees and granted two motions for new trial.

The 2011 divorce decree divided Shakouri's two retirement accounts. Specifically, the decree awarded Badiyan 50% of Shakouri's retirement benefits in his EDS/Hewlett Packard retirement plan and 100% of funds in any 401K plan arising out of Shakouri's employment with other employers. The decree stated that the divisions were "more particularly defined in a Qualified Domestic Relations Order to

2

be signed by the Court," however the trial court did not issue the orders at the time it entered the divorce decree.

In March 2020, Badiyan filed a petition to enter the QDROs. In August 2020, after a hearing, the trial court entered two QDROs to effectuate division of the retirement benefits as specified in the 2011 divorce decree. Shakouri appeals the trial court's issuance of the QDROs.

## II.    Jurisdiction

In his first point, Shakouri contends the trial court erred in issuing the QDROs because the orders enforce a void divorce decree, namely the 2011 divorce decree. Shakouri claims that the 2011 decree is void because the trial court issued it after it lost its plenary power over the divorce proceedings. We disagree. We will succinctly describe the chronology of events that gave the trial court continuing jurisdiction over this case from 2003 until it entered the final divorce decree in 2011. Before we start, however, we will set out the law as it pertains to the extension of a trial court's plenary power.

### A.    Extending a trial court's plenary power

A trial court's "plenary power" is its power to dispose of any matter properly before it. *See Plenary Power*, Black's Law Dictionary (11th ed. 2019). Generally, a trial court may correct or revise its judgment only during the period of its plenary power, *see Tex. Dep't of Ins., Div. of Workers' Comp. v. Albertson's Inc.*, No. 2-08-205-CV, 2009 WL 736694, at *1 n.2 (Tex. App.—Fort Worth Mar. 19, 2009, no pet.) (per curiam)

(mem. op.), which is within thirty days after the judgment.  Tex. R. Civ. P. 329b(d). But that period is extended if, within the thirty days, a motion assailing the judgment is filed.  Tex. R. Civ. P. 329b(e) ("If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first.").  The rule specifically mentions motions for new trial or to modify, correct, or reform the judgment but includes anything else that has the same effect.  *See Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 313 (Tex. 2000) (holding "a motion seeking a substantive change will extend the . . . court's plenary power under Rule 329b(g)"); *Gomez v. Tex. Dep't of Crim. Justice*, 896 S.W.2d 176, 176–177 (Tex. 1995) (treating an instrument filed as a "bill of review" as assailing the judgment and thus extending the time for perfecting appeal and the trial court's plenary jurisdiction to alter its judgment); *see also Kirschberg v. Lowe*, 974 S.W.2d 844, 847–48 (Tex. App.—San Antonio 1998, no pet.) (treating a motion for judgment *non obstante veredicto* as assailing the judgment and concluding that "the filing of any postjudgment motion or other instrument that (1) is filed within the time for filing a motion for a new trial and (2) 'assail[s] the trial court's judgment' extends the appellate timetable").  The "nature of a motion is determined by its substance, not its caption."  *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 72 (Tex. 2008) (orig. proceeding).

4

While a trial court has plenary power, its power to modify its judgment is virtually absolute. *In re Provine*, 312 S.W.3d 824, 829 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (combined appeal & orig. proceeding).

We review jurisdiction questions de novo. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993); *Marshall v. Priess*, 99 S.W.3d 150, 156 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

**B.     The trial court's jurisdiction to enter the 2011 divorce decree**

**1.  The April 2006 decree**

On April 21, 2006, the trial court signed the first final divorce decree between Shakouri and Badiyan. Thus, the trial court had thirty days from April 21, 2006, to correct or revise its judgment. Tex. R. Civ. P. 329b(d). On April 24, 2006, Badiyan filed a timely motion asking the trial court to grant all sixteen of the objections she asserted in her April 4, 2006 First Amended Objections to Proposed Decree or to "grant the alternative relief requested in that same document." Badiyan attached a copy of the April 4, 2006 objections to her motion and stated that the document was "incorporated herein by reference for all purposes as if fully set forth at length." In her April 4, 2006 motion, Badiyan requested the trial court give her "her day in court." Accordingly, we construe Badiyan's April 24, 2006 motion, which incorporates her April 4, 2006 motion, as a request for a new trial. *See* Tex. R. Civ. P. 329b(a), (g); *see also Gomez*, 896 S.W.2d at 176–77. Badiyan's April 24, 2006 motion extended the trial court's plenary power until such time that it ruled on her motion or

5

until the motion was deemed overruled by operation of law—seventy-five days after the divorce decree was signed. Tex. R. Civ. P. 329b(c). The trial court never ruled on Badiyan's motion; therefore, it was overruled by operation of law on July 5, 2006. *Id.* The trial court's plenary power was then extended to August 4, 2006—thirty days after Badiyan's motion was overruled by operation of law. *See* Tex. R. Civ. P. 329b(e); Tex. R. Civ. P. 306a(1).

On July 28, 2006, before the trial court's plenary power expired on August 4, 2006, the trial court granted a new trial on its own motion. *See* Tex. R. Civ. P. 320 (stating that a trial court may grant a new trial on its own motion). Once the trial court granted the new trial, the court's plenary power was not subject to a deadline. *See In re Baylor Med. Ctr. at Garland*, 280 S.W.3d 227, 230–31 (Tex. 2008) (orig. proceeding) (holding that when a new trial is granted, the case stands on the trial court's docket "the same as though no trial had been had").

### 2. The September 2006 decree

On September 27, 2006, the trial court signed a reformed final divorce decree. Shakouri then filed a timely motion for new trial on October 26, 2006. The clerk's record does not reflect that the trial court ruled on the new-trial motion. Accordingly, because the trial court did not rule on Shakouri's motion for new trial, the trial court's plenary power was extended to January 10, 2007—seventy-five days (to rule on motion) plus thirty days after the motion was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c), (e), (g); 306a(1). On November 17, 2006, before the trial court's

6

plenary power expired, the trial court again granted a new trial on its own motion, and the trial court's plenary power was no longer subject to a deadline.[1] *See* Tex. R. Civ. P. 320; *Baylor Med. Ctr. at Garland*, 280 S.W.3d at 230–31.

### 3. The June 2011 decree

On June 23, 2011, the trial court signed the final decree of divorce. *See Baylor Med. Ctr. at Garland* 280 S.W.3d at 230–31.

### 4. The associate judge's report was not a final order.

Shakouri claims that the June 2011 divorce decree is void because the true and valid divorce decree was entered on October 31, 2005, when the district court judge signed an associate judge's handwritten report. Badiyan, however, argues that the associate judge's report was not a final order because (1) it did not contain the required information needed to render it a final order, (2) it lacked an indicia of finality, and (3) neither of the parties nor the district court judge treated the report as a final order. Specifically, Badiyan asserts

> [h]ere, the October 28, 2005 associate judge's report was not the final order, even though it was signed by the district judge on October 31, 2005, because it did not contain the requirements of Section 105.006, it did not even include the names or any information about the children, Appellant filed a motion to enter that the court set for hearing, the associate judge heard objections to the proposed decree and ruled on them, the district judge signed the associate judge's ruling, Appellant filed a second motion to enter that was also set for hearing and then

---

[1]We held that the trial court had plenary power to grant its November 17, 2006 new trial motion when we dismissed Shakouri's 2007 appeal as moot. *See Shakouri v. Shakouri*, No. 2-06-365-CV, 2007 WL 495182, at *1 (Tex. App.—Fort Worth Feb. 15, 2007, no pet.) (per curiam) (mem. op.).

> continued, the associate judge set a deadline for written objections to the form of the decree, objections were filed, the associate judge ruled on those objections, and then both the associate judge and the district judge signed the final decree of divorce in April 2006. Further, the associate judge's report does not state that it finally disposes of all claims and all parties, that it is final, or that it is appealable. *See In re R.R.K.*, 590 S.W.3d 535, 542–43 (Tex. 2019).

[Record references omitted.]  We agree that the associate judge's October 31, 2005 report was not a final order.

The Family Code recites that a final order affecting the parent–child relationship must contain certain information to qualify as a final order. *See* Tex. Fam. Code Ann. § 105.006(d).  As we will discuss, a missing required element does not conclusively negate finality, but a failure to include multiple required elements suggests ambiguity as to the trial court's intent. *R.R.K.*, 590 S.W.3d at 542.  In this case, that ambiguity is not otherwise resolved on the face of the report because it lacks language that it finally disposes of all claims and parties and is appealable.

Family Code Section 105.006(a) entitled "Contents of Final Order," provides that a final order in a proceeding involving minor children "must contain" the parties' drivers' licenses and social security information, current home and work addresses, and telephone numbers.  Tex. Fam. Code Ann. § 105.006(a)(1)–(2).  Additionally, Section 105.006(b) requires a trial court's final order to direct each party subject to the order to notify the court, the other parties, and the state case registry of changes in the parties' identifying information, for as long as any party is obligated to pay child support or is entitled to possession or access to the child. *Id.* § 105.006(b).  Section

105.006(d) further provides that final orders must prominently feature statutory warnings stating the legal consequences for failing to comply with the order.[2] *Id.* § 105.006(d). And the order must provide a statutory notice to peace officers of the order's enforceability.[3] *Id.* § 105.006(e-1). Additionally, an order addressing child

---

[2]Specifically, Section 105.006(d) provides:

An order in a suit that orders child support or possession of or access to a child must contain the following prominently displayed statement . . . :

"FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS."

"FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY NOT RECEIVING CREDIT FOR MAKING THE PAYMENT."

"FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY."

*Id.* § 105.006(d).

[3]Specifically, Section 105.006(e-1) states:

An order in a suit that provides for the possession of or access to a child must contain the following prominently displayed statement . . . :

9

support must prominently include the circumstances in which a court may modify

court-ordered child support, using language provided by the statute.[4]

        "NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000."

*Id.* at § 105.006(e-1).

[4]Specifically, Section 105.006(e-2) states:

An order in a suit that orders child support must contain the following prominently displayed statement . . . :

        "THE COURT MAY MODIFY THIS ORDER THAT PROVIDES FOR THE SUPPORT OF A CHILD, IF:

        (1) THE CIRCUMSTANCES OF THE CHILD OR A PERSON AFFECTED BY THE ORDER HAVE MATERIALLY AND SUBSTANTIALLY CHANGED; OR

        (2) IT HAS BEEN THREE YEARS SINCE THE ORDER WAS RENDERED OR LAST MODIFIED AND THE MONTHLY AMOUNT OF THE CHILD SUPPORT AWARD UNDER THE ORDER DIFFERS BY EITHER 20 PERCENT OR $100 FROM THE AMOUNT THAT WOULD BE AWARDED IN ACCORDANCE WITH THE CHILD SUPPORT GUIDELINES."

*Id.* § 105.006(e-2). In sum, Section 105.006 provides a framework for what information must be included in a final order affecting the parent–child relationship.

Added to this statutory framework is our finality jurisprudence. A judicial decree is final when it disposes of all issues and all parties in the record. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Because a court order need not be in any particular form, "whether a judicial decree is a final judgment must be determined from its language and the record in the case." *Id.* When an order "finally disposes of all claims and all parties" in "clear and unequivocal" language, it is a final order. *In re Elizondo*, 544 S.W.3d 824, 827–28 (Tex. 2018) (orig. proceeding). If, however, an order's finality is not "clear and unequivocal," then a reviewing court must examine the record to determine whether the trial court intended the order to be final. *Id.* at 827.

To the extent that the associate judge's 2005 report is an order, it is an order affecting the parent–child relationship because the report designates Badiyan as sole managing conservator and sets out Shakouri's child-support obligation. *See* Tex. Fam. Code Ann. § 101.032(a) (stating that a suit "affecting the parent–child relationship" is one in which a party requests the appointment of a managing conservator or support of a child). Again, an order failing to meet the requirements of Section 105.006 suggests ambiguity as to the order's finality. *R.R.K.*, 590 S.W.3d at 542.

---

*Id.* at § 105.006(e-2).

11

This report lacks many of Section 105.006's requirements for final orders and contains none of the statutorily required warnings and advisories. Specifically, the report does not contain Shakouri's or Badiyan's driver's license or social security information, current home and work addresses, or telephone numbers. *See* Tex. Fam. Code Ann. § 105.006(a)(1)–(2). Nor does the report direct Shakouri and Badiyan to notify the court, each other, and the state case registry of changes in their respective identifying information, for as long as either is obligated to pay child support or is entitled to possession or access to the child. *Id.* § 105.006(b). Further, the report does not contain the (1) statutory warnings stating the legal consequences for failing to comply with the order, (2) statutory notice to peace officers of the order's enforceability, or (3) the circumstances in which a court may modify court-ordered child support. *Id.* § 105.006(d), (e-1), (e-2).

As noted, a failure to comply with every aspect of Section 105.006, alone, is not fatal to a finality determination. *See R.R.K.*, 590 S.W.3d at 542. And we also note that the associate judge's report includes "Mother Hubbard" language—a recitation that "[a]ll other relief requested & not specifically granted is denied." *See Lehmann*, 39 S.W.3d at 192. But the Mother Hubbard language in the report is not the type of clear and unequivocal language that establishes finality beyond doubt. *R.R.K.*, 590 S.W.3d at 540–41; *Elizondo*, 544 S.W.3d at 825.

Therefore, due to the report's omissions of elements required by Section 105.006 and its failure to include "clear and unequivocal" language that it disposes of

all claims and all parties and is appealable—we have doubts about the order's finality. *R.R.K.*, 590 S.W.3d at 540–41; *see also Dejean v. Brown*, No. 01-17-00949-CV, 2018 WL 2011668, at *1 (Tex. App.—Houston [1st Dist.] May 1, 2018, no pet.) (per curiam) (mem. op.) ("[T]his docket entry neither was memorialized as a signed order, nor is it a 'final order' under Title 5 of the Family Code because it does not contain the items required under Section 105.006 and it does not state that it disposes of all parties and claims."); *Qutiefan v. Safi*, No. 01-17-00925-CV, 2018 WL 1189667, at *1 (Tex. App.— Houston [1st Dist.] Mar. 8, 2018, no pet.) (per curiam) (mem. op.) ("[T]his is not a 'final order' under Title 5 of the Family Code because it does not contain the several items required under Section 105.006 and it does not state that it disposes of all parties and claims."). Accordingly, we must examine the record to determine the trial court's intent. *Vaughn v. Drennon*, 324 S.W.3d 560, 563 (Tex. 2010) ("If there is any doubt as to the judgment's finality, then '[f]inality must be resolved by a determination of the intention of the court [as] gathered from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties.'" (quoting *Lehmann*, 39 S.W.3d at 203)).

As the quote from Appellee's brief demonstrates, the parties did not treat the associate judge's report as a final order but instead litigated the contents of a final decree for months. Moreover, after the district judge signed the 2005 report, it granted two motions for new trial and set aside two final divorce decrees before it entered the June 2011 decree.

13

The actions of the parties and the trial court following the trial court's signing of the associate judge's 2005 report demonstrates that no one intended the report to be the final judgment in this case. *See R.R.K.*, 590 S.W.3d at 544 (holding memorandum not a final order because after memorandum was issued parties entered into agreement in anticipation of final order being drafted, trial court held hearing on parties' motions to enter final order, and final order was more specific and thorough than memorandum).

For the reasons set forth above, we hold that the June 23, 2011 divorce decree is not void. We overrule Shakouri's first point of error.

## III. The trial court did not abuse its discretion by entering the QDROs.

In his second, third, and fourth points, Shakouri argues that the trial court abused its discretion by entering the QDROs because (1) the statute of limitations to divide marital property had run, (2) the orders altered the division of property made in the divorce decree, and (3) Badiyan's motion for the QDROs was an impermissible collateral attack on the division of property contained in the 2005 associate judge's report.[5] We disagree.

---

[5]In his second point of error, Shakouri also argues that the trial court abused its discretion in issuing the QDROs because he had entered into a contract with Badiyan in which she had agreed to forfeit any entitlement to his retirement benefits. This claim, however, is an impermissible collateral attack on the 2011 divorce decree. *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009); *Armentor v. Kern*, 178 S.W.3d 147, 149 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

## A. Standard of review

A QDRO is a species of post-divorce enforcement or clarification order. *Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (op. on reh'g). We review the trial court's ruling on a motion for enforcement or clarification of a divorce decree under an abuse of discretion standard. *In re Marriage of McDonald*, 118 S.W.3d 829, 832 (Tex. App.—Texarkana 2003, pet. denied). The trial court abuses its discretion when it (1) acts unreasonably, arbitrarily, or without reference to any guiding rules or principles or (2) erroneously exercises its power by making a choice outside the range of choices permitted the court by law. *Id.*

## B. The statute of limitations does not apply to a trial court's issuance of a QDRO.

Shakouri claims that the statute of limitations for the division of the marital property was triggered when the district court judge signed the associate judge's report in 2005 and expired two years later. Section 9.003 of the Texas Family Code imposes a deadline of two years to enforce the division of tangible personal property. Tex. Fam. Code Ann. § 9.003. But a trial court retains "continuing, exclusive jurisdiction," "[n]otwithstanding any other provision of this chapter," to render a QDRO based on a previous division of property when no QDRO existed before. Tex. Fam. Code Ann. §§ 9.101, 9.103. Accordingly, no statute of limitations applies to a request to enter a QDRO. *See Watret v. Watret*, 623 S.W.3d 555, 563 (Tex. App.— El Paso Apr. 26, 2021, no pet.) (holding that statute of limitations provision contained

in Section 9.003 does not apply to a request for an order clarifying the divorce decree as to retirement benefits); *Murray v. Murray*, 276 S.W.3d 138, 144 (Tex. App.—Fort Worth 2008, pet. dism'd).

### C. The QDROs did not alter the division of property made in the divorce decree.

Next, Shakouri claims that the QDROs impermissibly altered the division of property set out in the divorce decree. We disagree. A court rendering a final divorce decree may render an enforceable QDRO "permitting payment of pension, retirement plan, or other employee benefits divisible . . . to an alternate payee or other lawful payee." Tex. Fam. Code Ann. § 9.101(a); *Marshall*, 99 S.W.3d at 156. The June 2011 divorce decree awarded Badiyan 50% of Shakouri's EDS/Hewlett Packard retirement benefits and 100% of the funds in any other of Shakouri's retirement plans. The two QDROs conformed to the division of property as set out in the June 2011 divorce decree.

Shakouri's argument that the QDROs altered the division of property is grounded on his claim that the 2005 associate judge's report is the final divorce decree. But, as discussed, the 2005 associate judge's report is not the final divorce decree; the 2011 divorce decree is the final decree. And the QDROs simply effectuate the division of the retirement accounts as set out in the 2011 divorce decree. The trial court did not abuse its discretion by entering the QDROs.

16

**D. Badiyan's motion to enter the QDROs was not a collateral attack on the divorce decree.**

In his fourth point of error, Shakouri claims that Badiyan's motion for the QDROs is an impermissible collateral attack on the division of property set out in the 2005 associate judge's report. Again, the 2005 associate judge's report is not the final divorce decree; the 2011 divorce decree is the final decree. Moreover, the QDROs do not operate to avoid the effect of the divorce decree—they effectuate the division of the retirement accounts as set out in the 2011 divorce decree. *See Armentor*, 178 S.W.3d at 149.

We overrule Shakouri's second, third, and fourth points of error.

## IV. Shakouri's motion for continuance

In his sixth point of error, Shakouri claims that the trial court abused its discretion by failing to grant his motion for continuance.

### A. Standard of review

A trial court's ruling on a motion for continuance is reviewed for an abuse of discretion. *Sayles v. Senior Care Res., Inc.*, No. 02-20-00124-CV, 2021 WL 62130, at *4 (Tex. App.—Fort Worth Jan. 7, 2021, no pet.) (mem. op.). The denial of a motion for continuance should only be overturned if the trial court's decision was "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). "The test is whether the

trial court acted without reference to guiding rules or principles." *Sayles*, 2021 WL 62130, at *4.

## B. The trial court did not abuse its discretion by denying Shakouri's motion for continuance.

Shakouri asked for a continuance during the hearing on Badiyan's QDRO motion. Shakouri urged the trial court to grant his motion in order to provide the court with additional time to consider his pre-trial motions and to extend his time to conduct discovery. First, we note that after allowing Shakouri a generous amount of time to argue his motions, the trial court overruled them.[6] Nothing in the record indicates that the trial court needed additional time to consider Shakouri's motions. And as to Shakouri's request for additional time to conduct discovery, we note that Badiyan filed her petition to obtain the QDROs on March 10, 2020, but the hearing did not take place until July 24, 2020. Shakouri, however, did not seek any discovery from Badiyan until July 15, 2020, a mere nine days before trial. Shakouri failed to diligently utilize the rules of civil procedure for discovery purposes. *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988) (holding that when a party is prevented from obtaining discovery because he failed to act timely, that is a "predicament of its own making" and the "risk" a party takes by not "diligently pursuing discovery"); *D.R.*

---

[6]In his fifth point of error, Shakouri claims that the trial court violated his due process rights by "ignoring" his timely filed pre-trial motions. Shakouri is wrong; the trial judge indicated that he had read over Shakouri's motions prior to the hearing, and the trial judge allowed Shakouri ample time to argue the merits of his motions at the QDRO hearing. We overrule this point of error.

*Horton-Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 223 (Tex. App.—Fort Worth 2013, no pet.). Accordingly, the trial court's decision to deny the motion was not "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *See Joe*, 145 S.W.3d at 161. We overrule Shakouri's sixth point of error.

## V.     Fraud and breach of fiduciary duties allegations

In his last point of error, Shakouri argues that Badiyan obtained the 2011 divorce decree by committing fraud on the court and by breaching her fiduciary duties to him. Shakouri's claims are an impermissible collateral attack on the 2011 divorce decree. *See* Tex. Fam. Code Ann. § 9.007; *cf. In re A.B.*, 207 S.W.3d 434, 439 (Tex. App.—Dallas 2006, no pet.) (holding that the exclusive remedy available to attack a final divorce decree is a bill of review).

A collateral attack seeks to avoid the effect of a judgment. *Armentor,* 178 S.W.3d at 149. To prevail on a collateral attack, a party to the original judgment must show that the complained-of judgment is void, not simply voidable. *Id.* A judgment is void only when the court rendering judgment "had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court." *Gainous*, 219 S.W.3d at 105; *see also Hagen*, 282 S.W.3d at 902 (holding that errors other than lack of jurisdiction over the parties or the subject matter render the judgment voidable and may be corrected only through a direct appeal); *cf. Solomon, Lambert, Roth & Assocs., Inc. v. Kidd*, 904 S.W.2d 896, 899 (Tex. App.—Houston [1st Dist.] 1995, no writ) (holding party's claim that default judgment

was rendered as result of fraud did not allege jurisdictional deficiency, but rather sought to render judgment merely voidable, and therefore was an impermissible collateral attack).

As discussed extensively above, the 2011 divorce decree is not void. Therefore, Shakouri's collateral attack is not permitted.[7] *See Hagen*, 282 S.W.3d at 902. Additionally, once Badiyan hired counsel to file her petition to divorce, she no longer owed Shakouri fiduciary duties. *Boyd v. Boyd*, 67 S.W.3d 398, 405 (Tex. App.—Fort Worth 2002, no pet.) (holding that the fiduciary duty arising from the marriage relationship does not continue when a husband and wife each hire independent professional counsel to represent them in a contested divorce proceeding).

We overrule Shakouri's seventh point of error.

## VI. Conclusion

Having overruled all of Shakouri's points of error, we affirm the trial court's issuance of the QDROs.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: January 20, 2022

---

[7]We also note that Shakouri failed to file a bill of review challenging the divorce decree.