Harvey v. Harvey 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00678-CV







Gary Dennis Harvey, Appellant



v.



Patricia Felter Harvey, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 443,373, HONORABLE CARL C. ANDERSON, JUDGE PRESIDING






 More than two years after the signing of a decree granting a divorce to Gary Dennis
Harvey, appellant, and Patricia Felter Harvey, appellee, Patricia moved for enforcement and
clarification of the decree. The trial court signed an order purporting to clarify a portion of the
original decree relating to Gary's retirement benefits. On appeal, Gary asserts that the
clarification order makes an impermissible substantive change in the original division of property
and is therefore invalid and unenforceable. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND


 Gary and Patricia were granted a divorce by a decree dated May 16, 1990. At the
time of the divorce, Gary was employed by the Minnesota Mining and Manufacturing Company
("3-M") and was a participant in 3-M's "tax qualified" retirement plan. The original divorce
decree divided the accrued benefits of this retirement plan as follows:


 Petitioner [Gary Harvey] is awarded the following as Petitioner's sole and
separate property, and Respondent [Patricia Harvey] is divested of all right, title,
interest, and claim in and to such property:

* * *


5. All benefits payable under the 3-M Pension plan other than those benefits
specifically awarded to PATRICIA FELTER HARVEY herein.

* * *


 Respondent [Patricia] is awarded the following as Respondent's sole and
separate property, and Petitioner [Gary] is divested of all right, title, interest, and
claim in and to such property:

* * *


12. A portion of retirement benefits pursuant to the following provisions:


 This Decree of Divorce shall be a "qualified domestic relations order"
pursuant to Section 414(p) of the Internal Revenue Code. In compliance with that
provision, the following is ORDERED and specified:


This qualified domestic relations order assigns a portion of the benefits
payable in the 3-M Pension Plan ("the Plan") at 3-M to PATRICIA
FELTER HARVEY in recognition of the existence of her marital rights in
GARY DENNIS HARVEY's retirement benefits as defined by Texas law
in Berry v. Berry, 647 S.W.2d 945 (Tex. 1983).


Participant in the Plan is GARY DENNIS HARVEY . . . .


Alternate Payee is PATRICIA FELTER HARVEY . . . .


On the date of this divorce, Participant's present accrued benefit for
retirement at normal retirement age under the Plan is $1,387.00 per month.


As part of a just and right division of the estate of the parties, the Court
awards, assigns, and grants to Alternate Payee 45 per cent of the present
value of Participant's accrued benefits as of October 21, 1988.


Alternate Payee may elect any form of payment of her portion of the
available benefits, being 45% of Participant's accrued benefits as of
October 21, 1988, and shall have the right to elect to receive said benefit
payments on or after the earliest date on which benefits are available, so
long as the election is not contrary to the terms of the Plan. . . .


In the event Participant elects to retire from the Plan prior to normal
retirement age and by reason of such early retirement the Plan provides an
early retirement subsidy, the Alternate Payee is entitled to 45% of any
early retirement subsidy paid to Participant.


* * *



All benefits payable under the 3-M Pension Plan other than those payable
to PATRICIA FELTER HARVEY shall be payable to GARY DENNIS
HARVEY in such manner and form as GARY DENNIS HARVEY may
elect in his sole and undivided discretion, subject only to Plan
requirements.


The decree made no mention of survivor benefits, nor did it designate Patricia as Gary's
"surviving spouse."

 Upon submission of the original decree to 3-M, a 3-M representative concluded that
the decree failed to meet the statutory requirements to be a qualified domestic relations order
("QDRO"). In a November 14, 1990 letter to both parties, the 3-M representative pointed out
certain technical problems with the decree as drafted and what remedies should be taken to comply
with ERISA standards. (1) The letter also mentioned that:


You should also be aware that, as the Decree is presently drafted, the Plan would
not make any payments to Ms. Harvey in the event that Mr. Harvey died before
the date on which it was required to begin making payments to Ms. Harvey. This
situation may be avoided by including in the Decree language naming Ms. Harvey
as Mr. Harvey's surviving spouse for purposes of section 205 of ERISA, to the
extent of the benefits assigned by the Decree.


The 3-M representative attached to his letter a draft of an acceptable order, which incorporated
the terms of the original decree, made the necessary technical changes to satisfy the requirements
for a QDRO, and contained a provision designating Patricia as Gary's "surviving spouse" for
purposes of receiving survivor benefits under the 3-M retirement plan.

 About two years after receiving this correspondence from 3-M, Patricia moved for
clarification of the original decree and offered the 3-M draft to the trial court. Gary objected,
arguing that the "surviving spouse" language was a substantive modification of the original decree
in violation of section 3.71 of the Family Code. Tex. Fam. Code Ann. § 3.71 (West 1993). 
Following a non-evidentiary hearing, the court granted Patricia's motion. (2) On August 4, 1994,
the court signed an order reciting that "[t]he Court finds that the prior order should be clarified
as ordered below . . . [and] that this clarifying order does not substantively modify the prior order
of this Court." The order also added the following language:


In the event that the Participant dies before payments to the Alternate Payee begin,
the Alternate Payee shall be considered the "surviving spouse" of the Participant
for purposes of Section 205 of the Employee Retirement Income Security Act of
1974, as amended (but only to the extent of the accrued benefit assigned by this
Order).


Findings of fact and conclusions of law were neither requested nor filed.




DISCUSSION


 Gary's brief presents four points of error. In point of error one, he asserts that the
trial court's order "was not a clarification of the original decree . . . but was actually a
modification of the original decree . . . in that it granted to wife a new benefit and thus a
substantially greater share of the husband's benefits than the wife was originally awarded." In
point of error two, he asserts that the trial court's change in the terms of the original decree was
barred by the doctrine of res judicata. In point of error three, he asserts that the change in terms
"was not legally or factually supported by any evidence." In point of error four, he asserts that
Patricia's motion was time-barred under section 3.70(c) of the Family Code.

 Aside from the mere recitation of point of error two, Gary's brief makes no
argument whatsoever concerning the doctrine of res judicata. Accordingly, point of error two is
waived. Tex. R. App. P. 74(f); Johnson v. Garza, 884 S.W.2d 831, 836 (Tex. App.Austin
1994, writ denied).

 Aside from the mere recitation of point of error three, Gary's brief makes no
argument whatsoever concerning either the legal or factual sufficiency of the evidence to support
the trial court's order. Accordingly, point of error three is waived. Id.

 With respect to point of error four, the only relevant argument in Gary's brief is
contained in a footnote in which he quotes section 3.70(c) of the Family Code:


 After rendition of a decree of divorce or annulment, the court retains the
power to enforce the property division made under Section 3.63 of this code. A
motion to enforce the division of tangible personal property in existence at the time
of the decree must be filed within a period of two years after the decree was signed
or becomes final after appeal, whichever is the later, or the suit is barred. A
motion to enforce the division of future property not in existence at the time of the
original decree must be filed within a period of two years after the right to the
property matures or accrues or after the decree becomes final, whichever is the
later, or the suit is barred.


Tex. Fam. Code Ann. § 3.70(c) (West 1993). Even assuming that this footnote, which contains
no citation of authority, is enough to preserve error, we conclude that no error exists. The
retirement benefits that are the subject of this dispute did not constitute "tangible personal property
in existence at the time of the decree." Rather, it is clear that such benefits were in the nature of
future property, and Gary presented no evidence showing that Patricia's right to such property had
matured. We overrule point of error four.

 Thus, except for the footnote referred to above, Gary's brief is devoted entirely to
the issue raised in point of error one. As mentioned earlier, Gary argues in point of error one that
the trial court's order was not a true clarification, but was actually a substantive modification
which conferred a new benefit on Patricia. Since neither party attempted to present any evidence,
this point of error essentially argues that as a matter of law the trial court's order represented a
substantive modification of the original decree. We disagree.

 The supreme court has made clear that trial courts lack the authority to change the
property division in a final divorce decree. McGehee v. Epley, 661 S.W.2d 924, 926 (Tex.
1983); Schwartz v. Jefferson, 520 S.W.2d 881, 888 (Tex. 1975). In appropriate circumstances,
however, a clarifying order may be issued. The Family Code contains at least two relevant
provisions:


 Except as provided by this subchapter and by the Texas Rules of Civil
Procedure, a court may not amend, modify, alter, or change the division of
property made or approved in the decree of divorce or annulment. Further orders
may be entered to enforce the division, but these orders shall be limited to orders
in aid of or in clarification of the prior order. The court may specify more
precisely the manner of effecting the property division previously made if the
substantive division of property is not altered or changed.


Fam. Code § 3.71(a). "On a finding by the court that the original form of the division of property
is not specific enough to be enforceable by contempt, the court may issue a clarifying order setting
forth specific terms to enforce compliance with the original division of property." Id. § 3.72(b). 
A proper clarification order is consistent with the prior judgment and "merely enforces by
appropriate order the controlling settlement agreement." Young v. Young, 810 S.W.2d 850, 851
(Tex. App.Dallas 1991, writ denied); see Fam. Code §§ 3.71(a), 3.72(b).

 When a divorce decree is not a consent decree or agreed judgment, the normal rules
applicable to the construction of judgments apply to its interpretation. See Biaza v. Simon, 879
S.W.2d 349, 355 (Tex. App.Houston [14th Dist.] 1994, writ denied). Thus, where such a
decree is unambiguous, the trial court has no authority to issue an order altering or modifying the
original disposition of property. Pierce v. Pierce, 850 S.W.2d 675, 679 (Tex. App.El Paso
1993, writ denied); Haworth v. Haworth, 795 S.W.2d 296, 299-300 (Tex. App.Houston [14th
Dist.] 1990, no writ). If the property division in the original divorce decree is ambiguous,
however, or not specific enough to be enforceable by contempt, the court may enter a clarifying
order to enforce compliance with the way the property was originally divided. Pearcy v. Pearcy,
884 S.W.2d 512, 514 (Tex. App.San Antonio 1994, no writ).

 On the other hand, when a divorce decree is a consent decree or agreed judgment,
"it must be interpreted as if it were a contract between the parties, and the interpretation thereof
is governed by the laws relating to contracts." Biaza, 879 S.W.2d at 355. The rules relating to
the construction of contracts are familiar:


 When construing a contract, the court's primary concern is to give effect to
the written expression of the parties' intent. This court is bound to read all parts
of a contract together to ascertain the agreement of the parties. The contract must
be considered as a whole. Moreover, each part of the contract should be given
effect.


Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994) (citations omitted).

 The original divorce decree in the present case recited that "[t]he Court finds that
the parties have reached an agreement regarding the division of their assets and debts and that the
following is a just and right division of the parties' marital estate, having due regard for the rights
of each party." Accordingly, we conclude that the original decree was a consent decree, at least
as far as the division of property is concerned. (3)

 We construe Gary's first point of error to assert that as a matter of law the parties'
intent reflected in the original decree was not to grant Patricia survivor benefits. We disagree
with this assertion. Although the original decree did not specifically mention "survivor benefits,"
it did expressly recognize Patricia's marital rights in the 3-M pension plan, awarded Patricia "45
per cent of the present value of [Gary's] accrued benefits," and stated that Patricia "may elect any
form of payment of her portion of the available benefits." (4) In the absence of evidence that the 3-M plan treated survivor benefits as being separate and distinct from "retirement benefits," and in
the absence of any evidence of the parties' intentions in that regard, we conclude that Gary has
not demonstrated as a matter of law that the parties intended for the decree granting Patricia forty-five per cent of Gary's "retirement benefits" to exclude survivor benefits from that grant. Point
of error one is overruled.


CONCLUSION


 We affirm the trial court's order.



 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: August 30, 1995

Publish
1. These technical problems consisted of: (1) not specifying the number of payments
that will be made to Patricia; (2) not detailing when such payments will begin and how
long they are to continue; (3) not specifying the form in which the payments are to be
made; and (4) not correctly designating "3-M" as "Minnesota Mining & Manufacturing
Company." See 26 U.S.C.A. § 414(p)(2) (West Supp. 1995); 29 U.S.C.A. § 1056(d)(3)(C)
(West Supp. 1995).
2.   Apparently neither party requested an opportunity to present evidence. Rather,
both parties submitted the case to the trial courtand have submitted it to this Courtas
involving only issues of law.
3.   We would reach the same result in this case even if the decree were not considered a
consent decree, because we cannot say that the relevant portion of the decree
unambiguously excludes survivor benefits from the award to Patricia of forty-five per
cent of the present value of Gary's retirement benefits.
4.   We recognize that a QDRO must expressly designate the former spouse as the
participant's "surviving spouse" in order to entitle the non-employee spouse to survivor
benefits. See 29 U.S.C.A. § 1056(d)(3)(F). In the present case, however, the original decree
was not a proper QDRO, so the question here is not resolved by strict ERISA law, but by
Texas law relating to the authority of a trial court to clarify an ambiguous divorce decree to
fulfil the intentions of the parties. We express no opinion as to whether a decree that is a
proper QDRO may be clarified in a way that changes the technical disposition of property.