
DA 12-0711

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 130

IN RE THE MARRIAGE OF
DANIEL ROBERT BUSHNELL,

Petitioner and Appellant,

and

RACHAEL RENEE YOUNG,
f/k/a RACHAEL RENEE BUSHNELL,

Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADR 2009-235
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Greg Beebe, Helena Avenue Law Offices, Helena, Montana

For Appellee:

Mark P. Yeshe, Attorney at Law, Helena, Montana

Submitted on Briefs:  April 16, 2014
Decided:  May 20, 2014

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Daniel Bushnell (Dan) appeals the District Court's order requiring him to designate his former spouse, Rachel Bushnell (Rachel), as the beneficiary of his Survivorship Annuity in his Survivor Benefit Plan.  The following issue is presented for review:

¶2      *Did the District Court err by requiring Dan to name Rachel as the beneficiary of his Survivor Annuity under Dan's Survivorship Benefit Plan?*

¶3      We reverse.

## BACKGROUND

¶4      Dan and Rachel were married in October of 2000.  Dan filed a Petition for Dissolution of Marriage on June 25, 2009.  The parties entered into a Parenting Plan and a Dissolution Settlement Agreement (Agreement), which were filed and approved by the District Court. The relevant portion of that Agreement provided:

> 8(e) Rachel shall receive 50% of Dan's Army National Guard retirement that was earned during the marriage.  That shall be defined as any points or retirement earned between the date of the parties' marriage (October 14, 2000) and December 31, 2010.  The parties intend to insure that ten years of Dan's service occurred during ten of the years that the parties were married.  A separate order will be created to effectuate this paragraph.
>
> .     .     .
>
> (h)  Each party shall retain ownership of any life insurance policies on his or her life.

The Agreement also contained a mutual release:

> In consideration of the execution of this agreement, and the terms and conditions hereof, each party hereto releases and forever discharges the other party and his or her personal representatives and assigns from any and all rights, claims, demands, and obligations except as herein provided, and each party is forever barred from having or asserting any such right, claim, demand, or obligation at any time hereafter for any purpose.  It is hereby agreed that the personal obligations of the parties shall be and remain their respective

2

obligations, and each party shall pay and hold the other free and harmless from any obligations for bills or merchandise or services separately incurred by the parties hereto, subsequent to the date of this agreement or not addressed in this agreement.

¶5 Rachel filed a Motion for Order to Show Cause alleging that Dan violated the Agreement, and the District Court held a hearing on October 25, 2012. At the hearing, Rachel argued that her entitlement to Dan's federal retirement benefits included a right to his Survivorship Benefit Plan (SBP). That plan included a Survivorship Annuity which paid out to a named beneficiary in the event of Dan's death. Dan argued that Rachel was not entitled to the Survivorship Annuity because it was not contemplated by the Agreement, and he had not yet elected the benefit or signed up for the annuity. Further, Dan argued that he may desire to name his future spouse as a beneficiary to the annuity. Rachel proposed that she would pay all premiums for the annuities so that she could receive a pay-out from the annuity should Dan die in combat.

¶6 The District Court granted Rachel's motion and issued an order requiring that Rachel be named as the spouse beneficiary of Dan's Survivor Benefit Plan. The order also noted that Rachel would reimburse Dan for his monthly payments of the premium on the annuity.

## STANDARD OF REVIEW

¶7 We review a district court's conclusions of law regarding a division of marital assets to determine whether they are correct. *In re Caras*, 2012 MT 25, ¶ 18, 364 Mont. 32, 270 P.3d 48. The construction and interpretation of a written contractual agreement is a question of law that we review for correctness. *Cole v. Valley Ice Garden, L.L.C.,* 2005 MT 115, ¶ 24, 327 Mont. 99, 113 P.3d 275.

3

¶8      The parties dispute the applicable standard of review in this case. Rachel argues that the federal code establishes an abuse of discretion standard in cases involving a survivorship annuity to a former spouse. *See* 10 U.S.C.S. § 1450(f)(4) (Lexis 2014) ("Former spouse coverage may be required by court order. A court order may require a person to elect . . . to provide an annuity to a former spouse (or to both a former spouse and child)."). Rachel is correct in arguing that a District Court *may* order the election of a former spouse as a beneficiary of a survivorship annuity. However, when a court's discretionary award of a SBP conflicts with a settlement agreement, "the language of the settlement agreement controls." *Williams v. Williams*, 37 So. 3d 1171, 1175 (Miss. 2010). The main issue in this case is not whether the court abused its discretion in awarding the SBP to Rachel, but whether it erred by failing to adhere to the language of the Settlement Agreement. The terms of a dissolution agreement are enforceable as contract terms, pursuant to § 40-4-201(5), MCA. The construction and interpretation of a contract is a question of law, which we review for correctness. *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 19, 338 Mont. 41, 164 P.3d 851 (citing *Ophus v. Fritz*, 2000 MT 251, ¶ 19, 301 Mont. 447, 11 P.3d 1192). Therefore, we examine a district court's ruling to determine whether it correctly applied the law in interpreting and applying the Agreement.

## DISCUSSION

¶9      In separations or marital dissolutions, parties may enter into a written agreement dividing any property owned by either spouse. Section 40-4-201(1), MCA. The terms of a dissolution agreement are enforceable as contract terms. Section 40-4-201(5), MCA. When an agreement fails to define a term, a court should interpret the terms as they are "understood

4

in their ordinary and popular sense." Section 28-3-501, MCA; *Cole*, ¶ 27. Unless SBP benefits have been automatically bestowed upon a spouse, the language of a property settlement agreement controls. *Williams*, 37 So. 3d at 1175.

¶10 We first turn to the Agreement to determine whether its terms award Rachel a portion of Dan's survivor annuity. Rachel argues that the terms "retirement," "retirement account," and "retirement plan" include Dan's survivor annuity benefit. Those terms are not defined in the Agreement. The plain meaning of a "survivorship annuity," however, is "an annuity providing for continued payments to a survivor, usu[ally] a spouse, after the original annuitant dies." *Black's Law Dictionary* 99 (Bryan A. Garner ed., 8th ed., West 2004). This type of annuity, which pays-out upon the annuitant's death, is distinguishable from retirement plans, benefits, or annuities, which cease upon the retiree's death. Further, a survivorship annuity is closer to a life-insurance policy in form and function because it pays out upon an annuitant's death, even if the annuitant has not reached retirement. *See Briese v. Mont. Pub. Emples. Ret. Bd.,* 2012 MT 192, ¶¶ 26-27, 366 Mont. 148, 285 P.3d 550 ("Like life insurance, the [retirement plan] beneficiary designation is part of an agreement to pay monies on the death of the member and, like life insurance, the payment is not realized during the member's lifetime.") (citations omitted); *see also* 10 U.S.C.S. §§1447-55 (Lexis 2014); 5 U.S.C.S. §§ 8331-51 (Lexis 2014). Because the Agreement here specifically held that "[e]ach party shall retain ownership of any life insurance policies on his or her life," the plain language of the agreement reflects the parties' intent that Dan was to retain ownership of the Survivorship Annuity.

5

¶11    Rachel cites to numerous authorities in other jurisdictions that have recognized "survivorship annuities" to be included within retirement plans or benefits. *See In re Marriage of Morris*, 810 N.W.2d 880 (Iowa, 2012); *Harvey v. Harvey*, 905 S.W.2d 760 (Tex. App.—Austin 1995); *Palmer v. Palmer*, 142 P.3d 971 (N.M. App. 2006); *In re Marriage of Payne*, 897 P.2d 888 (Colo. App. 1995); *Zito v. Zito*, 969 P.2d 1144 (Alaska 1998). But even if we found "survivorship annuity" to be within the plain meaning of "retirement," Rachel fails to address the effect of the phrase "earned during the marriage." Although subsections 8(a) and 8(e) award Rachel 50% of Dan's federal employment and National Guard retirement, that award of Dan's benefits was limited to those benefits "earned during the marriage." Dan's survivor annuity did not exist during the marriage, and even at the time of the District Court's hearing, Dan had not elected the benefit or purchased the policy. As such, the Agreement's language clearly prohibits Rachel from claiming future benefits or annuities acquired by Dan after the dissolution of the marriage. In addition, the authorities cited by Rachel all concern a survivorship annuity that was acquired and gained value during the marriage, or had specifically included SBP in the dissolution agreement, and therefore, they are inapposite to the present facts. *In re Morris*, 810 N.W.2d at 882 ("Nearly all of [husband's] retirement benefits accrued during their marriage."); *Harvey,* 905 S.W.2d at 764 ("Although the original decree did not specifically mention 'survivor benefits,' it . . . awarded [wife] '45 per cent of the present value of [husband's] *accrued* benefits,' and stated that [wife] 'may elect any form of payment of her portion of the *available* benefits.'") (emphasis added); *Palmer*, 142 P.3d at 976 ("[T]he settlement agreement makes it clear that the division of the retirement benefits was through the

6

'reserved jurisdiction,' or 'pay as it comes in' method. The settlement agreement states: 'Wife is entitled to a portion of the proceeds of the retirement *as Husband receives such proceeds*.'") (emphasis in original); *In re Payne*, 897 P.2d at 889 ("[H]usband's right to receive military pension benefits was acquired almost entirely during the parties' marriage . . . ."); *Zito*, 969 P.2d at 1447 ("[S]urvivor benefits are an intrinsic part of 'the retirement benefits earned during the marriage' . . . .").

¶12     The same problem arises with Rachel's reliance on *In re Marriage of Bowman*, 226 Mont. 99, 102, 734 P.2d 197, 202 (1986), to argue that the termination of a wife's survivor benefits jeopardizes her investment in the marital estate. That case, like the out-of-state authorities cited by Rachel, concerns a survivorship benefit that existed and gained value *during* the marriage, not a survivorship annuity that does not yet exist and will gain value only after the dissolution. *See In re Bowman*, 226 Mont. at 108, 734 P.2d at 203. Unlike the parties in *Bowman*, Rachel's "investment in the marital estate" has not been jeopardized because the annuity was never part of the marital estate. The Agreement was clear and unambiguous in holding that Rachel was not entitled to benefits or annuities gained by Dan after the dissolution.

¶13     Finally, Rachel argues that the Agreement was only meant to cover part of the marital estate, and that the parties understood that the SBP would be divided by a "separate order." That is not supported by the plain language of the Agreement. The "separate order" was to address only the ten years of retirement earned by Dan during the marriage. The Agreement was silent as to any survivorship annuity, but expressly disclaimed all rights to each other's life insurance policies, and the SBP fits that definition. The Agreement also contained a

7

mutual release, which stated that, "[i]n consideration of the execution of this agreement, and the terms and conditions hereof, each party hereto releases and forever discharges the other party . . . from any and all rights, claims, demands, and obligations except as herein specifically provided . . . ." Rachel's claim to the SBP was a new demand outside the terms of the parties' Agreement and therefore waived by the mutual release provision.

¶14 Because the Agreement was clear in its terms, the District Court could modify the Agreement's terms only upon a finding of unconscionability. Section 40-4-201(3), MCA; *In re Marriage of Blankenship*, 210 Mont. 31, 35, 682 P.2d 1354, 1356 (1984). A district court commits reversible error by modifying a settlement agreement without first finding it to be unconscionable. *In re Marriage of Franks*, 275 Mont. 66, 70, 909 P.2d 712, 714-15 (1996). The District Court made no finding of unconscionability, so its modification of the terms of the Agreement constituted an error of law.

## CONCLUSION

¶15 The District Court's order requiring Dan to name Rachel as the beneficiary of the SBP annuity is reversed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BETH BAKER

8