FILED

March 24 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0455

DA 14-0455

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 90

IN RE THE MARRIAGE OF:
BRENDA JEANETTE CADENA,
f/k/a Brenda Jeanette Fries,

      Petitioner and Appellee,

  v.

KEVIN JOHN FRIES,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR 99-1328
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Kathryn S. Syth, LaRance & Syth, PC; Billings, Montana

      For Appellee:

          Jeff A. Turner, Towe, Ball, Mackey, Sommerfeld & Turner, PLLP;
Billings, Montana

Submitted on Briefs:  February 25, 2015
Decided:  March 24, 2015

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Kevin John Fries (Fries) appeals from the qualified domestic relations order (QDRO) of the Montana Thirteenth Judicial District Court, Yellowstone County.  We affirm, order that Cadena is entitled to reasonable attorney fees on appeal, and remand for determination of those fees.

## ISSUES

¶2     We review the following issues:

*1.  Did the District Court err in its application of the law regarding division of Fries' pension?*

*2.  Is either party entitled to attorney fees?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Brenda Cadena (Cadena) and Fries married on June 7, 1980.  The marriage was dissolved by an order of the District Court on March 13, 2000.  The order approved a settlement agreement that Cadena and Fries entered into on February 29, 2000.  In the settlement agreement, Cadena and Fries had, among other things, agreed that Fries' Western Conference of Teamsters pension would be "equally divided between [them] as of the date of entry of a final decree of dissolution of marriage."  The District Court found that the agreement was "fair and equitable" and "not unconscionable."

¶4     Neither party further addressed the division of the pension until Cadena filed a proposed QDRO on November 12, 2013.  The pension had not fully vested or begun to pay out benefits by this time.  In the agreement, Cadena proposed to divide the pension as follows:

4. DESIGNATION OF ALTERNATE PAYEE'S SEPARATE PERCENTAGE INTEREST IN PARTICIPANT'S BENEFITS.

(a) The Court finds that [Fries] has earned Plan benefits that are community/marital property of [Fries] and [Cadena].

(b) The Court awards [Cadena] a separate interest in [Fries'] Plan benefits equal to 50% of the marital property portion of [Fries'] normal retirement benefit accrued to the effective date of [Cadena]'s Plan benefits ("Alternate Payee's Separate Percentage Interest"). The effective date of [Cadena]'s Plan benefits is hereinafter referred to as "Alternate Payee's Benefit Commencement Date."

(c) Alternate Payee's Separate Percentage Interest in [Fries'] Plan benefits shall be determined using the following formula: 50% multiplied by [Fries'] total hours of benefit service under the Plan earned from the date of marriage to the date of dissolution divided by [Fries'] total hours of benefit service earned up to Alternate Payee'[s] Benefits Commencement Date.

Cadena also proposed a number of provisions specifying alternate division schemes in case of Fries' death or Cadena's death. These alternate schemes are not relevant to this appeal.

¶5 Fries objected to Cadena's proposed QDRO, and he submitted a proposed order of his own. It was largely identical to Cadena's proposed order. The differences relevant to this appeal are underlined in the following excerpt from Fries' proposed order:

4. DESIGNATION OF ALTERNATE PAYEE'S SEPARATE PERCENTAGE INTEREST IN PARTICIPANT'S BENEFITS.

(a) The Court finds that [Fries] has earned Plan benefits that are community/marital property of [Fries] and [Cadena].

(b) The Court awards [Cadena] a separate interest in [Fries'] Plan benefits equal to 50% of the marital portion of [Fries'] normal retirement benefit accrued to the effective date of [Cadena]'s Plan Benefits ("Alternate Payee's Separate Percentage Interest"). The effective date of [Cadena]'s Benefits is March 13, 2000.

(c) Alternate Payee's Separate Percentage Interest in [Fries'] Plan benefits, [Cadena] shall be entitled to receive a portion of the monthly benefit that would be payable to [Fries] at normal retirement age, which is equal to fifty percent (50%) of [Fries'] vested benefit in the Plan, accrued

3

as of March 13, 2000, calculated as if [Fries] had separated from service on that date with a vested benefit under the Plan.

¶6   Following briefing, the District Court issued a QDRO identical to Cadena's proposed order, with the exception of a typographical change that is not relevant to this appeal.  Fries appeals from the QDRO.

## STANDARDS OF REVIEW

¶7   The construction and interpretation of a dissolution agreement is a question of law that we review for correctness.  *In re Marriage of Bushnell*, 2014 MT 130, ¶ 8, 375 Mont. 125, 328 P.3d 608.  We review a district court's conclusions of law regarding a division of marital assets to determine whether they are correct.  *Bushnell*, ¶ 7.  We review a district court's award of attorney fees to determine whether the court abused its discretion.  *In re Marriage of Mease*, 2004 MT 59, ¶ 57, 320 Mont. 229, 92 P.3d 1148.

## DISCUSSION

¶8   *1.  Did the District Court err in its application of the law regarding division of Fries' pension?*

¶9   The parties agree that the language of the settlement agreement as adopted by the dissolution order controls the division of the pension.  Accordingly, they agree that each of them is entitled to half of the value of the pension at the time of dissolution.  Each also agrees that his or her part of the pension at dissolution is to be paid to him or her as a portion of each scheduled benefit payment once such payments begin.[1]  The parties disagree, however, about how to determine their respective shares of each payment so

---

[1] As the parties agree that their portions of the pension at dissolution should be paid to them when pension benefit payments begin, we do not address whether this payment timing is required by the settlement agreement.

that the deferred payments reflect an equal division of the value of the pension at dissolution. Each of them claims that their proposed method is supported by the language of the settlement agreement.

¶10 It is well established that retirement benefits are part of the marital estate. *See, e.g., Rolfe v. Rolfe*, 234 Mont. 294, 296, 766 P.2d 223, 225 (1988). In separations or marital dissolutions, parties may enter into written agreements disposing of marital estates. Section 40-4-201(1), MCA; *Bushnell*, ¶ 9. Absent a finding of unconscionability, the District Court must divide property in a manner consistent with the terms of such an agreement. Sections 40-4-201(3) and -201(4), MCA; *Bushnell*, ¶ 14. Here, the settlement agreement specifies that "[Fries'] Teamster Retirement shall be equally divided between the parties as of the date of entry of a final decree of dissolution of marriage." The District Court found that this was not unconscionable and neither party contests this finding. It is therefore our role to determine whether the District Court's QDRO gives effect to this language. *See Bushnell*, ¶¶ 9, 14.

¶11 Fries contends that equal division at the time of dissolution, as required by the settlement agreement, requires division of each anticipated monthly benefit payment with respect to the vested value of the pension at the time dissolution was ordered. Put another way, he argues that Cadena should receive portions of the benefit payments based on the value of the benefit payments the couple would have been entitled to had Fries ended his employment on the date of their dissolution. The District Court rejected this approach because it claimed that it is not one of the methods of pension valuation that this Court has recognized. The District Court reasoned, as Cadena now argues, that this

5

Court has recognized two methods for valuing a pension, and that only the "time rule method" is appropriate in this case.

¶12 Cadena and the District Court are correct in noting that we have recognized two pension valuation methods. *In re Marriage of Swanson*, 2004 MT 124, ¶¶ 21, 26, 321 Mont. 250, 90 P.3d 418. Where the value of a pension is apportioned and distributed at the time of dissolution, we have required the use of the "lump sum method." This method requires valuation of the plan based on the present value of expected future payments. *Swanson*, ¶ 22; *see In re Marriage of Hochhalter*, 2001 MT 268, ¶ 32, 307 Mont. 261, 37 P.3d 665. Where, on the other hand, the spouses will each receive a portion of anticipated monthly payments that have not yet begun, we have required the parties to use the time rule method. This method divides any future monthly payments in proportion to the quotient of the time employed during marriage and the total time employed before retirement. *Swanson*, ¶ 23; *Rolfe*, 234 Mont. at 298, 766 P.2d at 226.

¶13 While we have required district courts to use one of these two valuation methods when equitably dividing a pension that is part of the marital estate, we have not foreclosed the use of other valuation methods when parties divide a marital estate by agreement. *See, e.g.*, *In re Marriage of Spawn*, 2011 MT 284, ¶¶ 10-12, 362 Mont. 457, 269 P.3d 887 (considering valuation methods in the context of equitable distribution); *Swanson*, ¶¶ 21, 26 (same); *Rolfe*, 234 Mont. at 300, 766 P.2d at 227 (same). Instead, the parties are limited only to whatever conscionable methods they can agree upon. *See* § 40-4-201, MCA; *Bushnell*, ¶ 14 (holding that absent unconscionable terms, a settlement agreement controls division of property in a dissolution); *cf. Kortum-Managhan v.*

6

*Herbergers NBGL,* 2009 MT 79, ¶ 45, 349 Mont. 475, 204 P.3d 693 ("every individual enjoys the fundamental freedom to contract, which allows parties to craft terms governing their private conduct"). Thus, the District Court and Cadena are incorrect when they concluded that Fries' proposed valuation method must be rejected because it was not one of the two accepted equitable division valuation methods.

¶14    Instead, Fries' method must be rejected because it does not give effect to the terms of the settlement agreement. That is, it would not result in equal division of the pension at the time of dissolution. There are three conceptual components to the value of the pension, given that the pension has yet to fully vest or to begin paying benefits and that the value of the pension is to be divided at one time and paid in the future. First, there is the vested monetary value of the pension at dissolution, based on the employer and employee contributions and any growth – from interest or otherwise – to the date of dissolution. Second, there is interest that may accrue on the value of the pension between dissolution and when benefit payments are made. *See Spawn,* ¶ 15; *Rolfe,* 234 Mont. at 298-99, 766 P.2d at 226. Third, there is potential for growth or loss in value that is attributable to sources other than interest. This may include, for example, growth from increased contributions or losses due to termination or early retirement. *See Spawn,* ¶ 13; *Rolfe,* 234 Mont. at 298, 766 P.2d at 226.

¶15    Here, Fries' proposed method would at most divide the first component, while apportioning the second and third to Fries alone. Fries argues that this gives effect to the settlement agreement, equally dividing the pension at dissolution. He implies that the settlement agreement's language "as of the date of entry of a final decree of dissolution

7

of marriage" means that the parties intended to forego division of the second and third conceptual components, as they concern potential future increases and decreases in value not attributable to pre-dissolution employment and not otherwise part of the pension's value at dissolution. This is incorrect.

¶16 Equal division of an amount to be paid in deferred installments requires equal division of any interest that may accrue during deferral. Each "spouse is entitled to increases or accruals on her [portion] because of the delay in receiving those payments." *Rolfe*, 234 Mont. at 298, 766 P.2d at 226; *accord* 1 Barth H. Goldberg, *Valuation of Divorce Assets*, § 9:14, 910 (rev. ed. 2005). Given the time value of money, the value of half the vested portion of the pension at dissolution, paid at some point in the future is, in reality, less than the value of the same amount paid at dissolution. Thus, by apportioning half the vested value of the pension at dissolution to Cadena and specifying that the same amount is to be paid when monthly benefit payments begin, Fries' method excludes Cadena from the interest on her share and apportions something less than half of the value of the pension at dissolution to Cadena. Only by apportioning interest accrued during deferral to each spouse can the pension at dissolution be equally divided at one time and paid at a time in the future.

¶17 Equal division of a pension to be paid in deferred installments also requires equal division of any gains or losses occurring during deferral that are not solely attributable to the merits of one spouse. *See Rolfe*, 234 Mont. at 298, 766 P.2d at 226. There is some value to the pension at dissolution that is not represented by the vested monetary value at that time. There can be some risk of loss due, for example, to early retirement or

8

termination of the employee spouse following dissolution. This negatively impacts the value of each spouse's share. Additionally, there is a possibility of gain attributable to sources other than interest, like the vesting of employer contributions and increased contributions due to non-merit pay raises. This positively impacts the value of each spouse's share. Such gains are also at least partially attributable to and cumulative of employment services performed before dissolution. *See Rolfe*, 234 Mont. at 298, 766 P.2d at 226; *see also* Goldberg, *Valuation of Divorce Assets* at § 9:5, 806; Susan J. Prather, Comment, *Characterization, Valuation, and Distribution of Pensions at Divorce*, 15 J. Am. Acad. Matrim. Law. 443, 459 (1998) ("[T]he greater-value later years would not have been possible without the lesser-value earlier years. We cannot say the years after the marriage were more valuable than the years during the marriage."). Neither the post-dissolution potential for loss or gain is represented in the vested monetary value of the pension at dissolution, yet each is part of the value of the pension at dissolution. Only by apportioning this post-dissolution potential to each spouse can the value of the pension at dissolution be equally divided and paid at a point in the future.

¶18 Fries' proposed method would only divide the vested value of the pension at the time of dissolution. It would not divide the interest or potential post-dissolution losses or gains earned during deferral. As such, Fries' proposed method would not equally divide the pension as of the dissolution, as required by the settlement agreement. Thus, although it did so for the wrong reasons, the District Court was correct in rejecting Fries' proposed method.

¶19 Similarly, the District Court correctly adopted Cadena's proposed method, but it did so for the wrong reasons. As expressed in the passage quoted above, Cadena's proposed method can be described by the following equation:

$$\text{Cadena's Payment Share} = \frac{1}{2} * \frac{\text{Marriage Employment Time}}{\text{Total Employment Time}} * \text{Total Payment.}$$

This is the time rule method, as we have adopted it in *Rolfe* and successive cases. *See Swanson*, ¶ 23; *Rolfe*, 234 Mont. at 298, 766 P.2d at 226. Because the time rule method is the accepted equitable division valuation method for dividing deferred benefits, the District Court adopted Cadena's proposed method. This reasoning was incorrect. Adoption was correct, though, since Cadena's method gives effect to the language of the settlement agreement by equally dividing all three conceptual components of the pension. Under the time rule method, "the extent of the marital interest is determined as of the date of the dissolution." *Spawn*, ¶ 15 (quoting *Rolfe*, 234 Mont. at 298, 766 P.2d at 226). However, the method necessarily takes interest and other post-dissolution gains or losses into account because "the benefit factors to be applied . . . are those in effect at retirement." *Spawn*, ¶ 15 (quoting *Rolfe*, 234 Mont. at 298, 766 P.2d at 226). Because Cadena's proposed method gives effect to the settlement agreement – equally dividing the pension as of the date of dissolution and paying each spouse their share of this division at some point in the future – the District Court was correct to adopt it in its QDRO.

¶20	*2. Is either party entitled to attorney fees?*

¶21	The District Court, after hearing arguments from each party, decided not to award attorney fees to either party. The parties agree that this was an abuse of discretion since the settlement agreement required the District Court to award attorney fees to the party prevailing in this action. The parties disagree, however, about to whom fees should be awarded as each contends that he or she is the prevailing party.

¶22	Section 40-4-110(1), MCA, provides that a court may, at its discretion, order either party to pay attorney fees related to maintaining or defending a dissolution proceeding. Where, however, a settlement agreement provides for payment of attorney fees, that agreement will control over § 40-4-110(1), MCA. *Mease*, ¶ 57. Here, the settlement agreement entered by Fries and Cadena states:

> Each party agrees to be solely responsible for his or her attorney fees, appraisal costs, and any other charges associated in any manner with this proceeding. However, should any action, other than to modify child support, be commenced in the future to enforce, modify or interpret any provision contained herein, the Court, as costs of suit, shall award reasonable attorney fees and costs [to] the prevailing party.

The present appeal and the underlying action concerned interpretation and enforcement of the settlement agreement. Thus, by the plain language of the agreement, the prevailing party is entitled to attorney fees.

¶23	Fries is not the prevailing party in this case. *See Hart v. Hart*, 2011 MT 102, ¶¶ 28-29, 360 Mont. 308, 258 P.3d 389. He, therefore, is not entitled to attorney fees. The District Court was correct when it decided not to award attorney fees in his favor.

¶24 Recognizing this, Cadena argues that she was the prevailing party and that she is entitled to fees. However, Fries notes that this court cannot award fees in favor of Cadena because she did not raise this issue in a cross-appeal. We agree.

¶25 We have held that an appellee cannot independently raise the issue of attorney fees in the absence of a cross-appeal or, for that matter, any "matters separate and distinct from those sought to be reviewed by the appellant." *Laudert v. Richland Cnty. Sheriff's Dep't*, 2000 MT 218, ¶ 46, 301 Mont. 114, 7 P.3d 386 (quoting *Johnson v. Tindall*, 195 Mont. 165, 169, 635 P.2d 266, 268 (1981)); *accord Rouse v. Anaconda-Deer Lodge Cnty.*, 250 Mont. 1, 9, 817 P.2d 690, 695 (1991); *Robertson v. Robertson*, 180 Mont. 226, 232, 590 P.2d 113, 116-17 (1978). We have also stated that "a party must cross-appeal if the party seeks to change any part of the judgment below," *City of Missoula v. Robertson*, 2000 MT 52, ¶ 19, 298 Mont. 419, 998 P.2d 144 (2000), and that "[a] respondent who has not cross-appealed may not seek a determination of the amount involved more favorable to him than that made by the court below." *Johnson*, 195 Mont. at 169, 635 P.2d at 268. While the issue of attorney fees was raised on appeal by Fries, Cadena may only argue against an award in Fries' favor in the absence of a cross-appeal. Seeking an award of fees in favor of herself would require Cadena to "seek[] to change . . . part of the judgment below" and "seek a determination . . . more favorable to [her]." This is not allowed in the absence of a properly filed cross-appeal. *City of Missoula*, ¶ 19; *Johnson*, 195 Mont. at 169, 635 P.2d at 268.

¶26 While we cannot consider whether Cadena is entitled to attorney fees incurred in the District Court, a cross-appeal is not necessary for this Court to award attorney fees

12

incurred on appeal. *See Chamberlin v. Puckett Constr.*, 277 Mont. 198, 210, 921 P.2d 1237, 1244 (1996). Cadena is the party prevailing in this appeal. Pursuant to the settlement agreement, she is entitled to reasonable attorney fees on appeal. Before attorney fees can be awarded, however, there must be some proof introduced into the record concerning the amount and reasonableness of the fees. *Mease*, ¶ 58. We therefore order that Cadena is entitled to reasonable attorney fees on appeal and remand to the District Court for determination of those fees.

## CONCLUSION

¶27 Cadena's proposed method of distributing the pension accurately reflected the division required by the settlement agreement. For this reason, the District Court was correct to adopt Cadena's proposed QDRO. It was also correct not to award attorney fees in favor of Fries. For these reasons, we affirm. As the prevailing party in this appeal and pursuant to the settlement agreement, Cadena is entitled to reasonable attorney fees on appeal. We remand to the District Court for determination of those fees.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BETH BAKER

13